**James William PAULSON**
v.
**The STATE OF FLORIDA.**
Civ. No. 73–126.

United States District Court,
S. D. Florida,
Miami Division.
June 14, 1973.

Barrett, Diliberto & Estrumsa by Shaya Estrumsa, Miami, Fla., for petitioner.

Robert L. Shevin, Atty. Gen., by Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent.

**158**

## ORDER OF DISMISSAL

KING, District Judge.

JAMES LAWRENCE KING, District Judge.

James William Paulson's petition for habeas corpus relief from his Florida conviction and sentence presents the question of whether the use as evidence in his felony trial of fingerprints taken after his allegedly invalid arrest on the misdemeanor charge of public intoxication violated the fourth and fourteenth amendments.

The state trial court found that the warrantless arrest petitioner challenges was justifiably delayed some five hours after the arresting officer witnessed the misdemeanor because he was in the midst of, and unavoidably detained by, an emergency late-night mission to aid a young woman who was seriously ill. It is undisputed that if the trial court should have suppressed the fingerprints as the poisonous fruit of an invalid arrest, habeas relief must be granted because petitioner would not otherwise have been convicted. The fingerprints provided the sole corroboration for the testimony of an accomplice upon which the State based its felony case against Paulson, and corroboration of an accomplice's testimony is required by Florida law.

### PROCEDURAL HISTORY

Following his conviction for grand larceny and breaking and entering, petitioner was sentenced on June 9, 1971, by the Criminal Court of Record in and for Dade County to three years of confinement on each of the two counts for which he is now serving concurrent terms. His timely appeal to the Third District Court of Appeal, which raised the issues he reasserts here, was denied on February 1, 1972. Paulson v. State, 257 So.2d 303 (Fla.App.1972). Petitioner then promptly sought federal habeas relief in this division which was denied without prejudice for failure to exhaust state remedies. Paulson v. State, Civil No. 72–455–Civ–JLK (S.D.Fla. June 9, 1972).

■ Paulson now returns with this action pursuant to 28 U.S.C. § 2254 (1970), having been denied permission without explanation to pursue the remedy contemplated by our prior order to the state's highest court. Thus, to withhold federal habeas corpus relief on a deliberate bypass theory cannot now be justified, since petitioner's initial failure to pursue his direct appeal in the state courts can hardly be deemed an intelligent and understanding waiver under these circumstances. Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Piazzola v. Watkins, 442 F.2d 284, 286 (5th Cir. 1971) cf. Wynn v. Smith, 446 F.2d 341, 345 & n.5 (5th Cir. 1971).

■■ This present record also compels the conclusion that Paulson has exhausted all available state remedies. He has "had his claims considered by the highest court of the state on direct appeal" possible under Florida law. McCluster v. Wainwright. 453 F.2d 162, 164 & n.4 (5th Cir. 1972); Williams v. Wainwright, 452 F.2d 775 (5th Cir. 1971); Bartz v. Wainwright, 451 F.2d 663 (5th Cir. 1971). Moreover, if the state courts have not here "made it clear . . . that they are unreceptive to [petitioner's] claims" sufficiently to obviate the § 2254 requirement that he reiterate them in such collateral state proceedings as are open to him, 453 F.2d at 164 & n.3, it is clear that the federal habeas exhaustion requirement does not apply where further state relief is in reality unavailable. Williams v. Wainwright, 452 F.2d 775, 777 (5th Cir. 1971); Wynn v. Smith, 446 F.2d 341, 345 (5th Cir. 1971); Piazzola v. Watkins, 442 F.2d 284, 286–287 (5th Cir. 1971). Consequently, where, as here, the questions presented have been fully discussed and decided on direct appeal in the Florida courts and will be held res judicata under state law in a collateral proceeding, Jones v. Wainwright, 252 So.2d 570, 571 (Fla.1971), petitioner

will not be remitted to the state courts to pursue an illusory remedy, thereby leaving him without a practical forum in which to assert his substantial constitutional claims. McCluster v. Wainwright, 453 F.2d 162, 164 & n.5 (5th Cir. 1972); Wynn v. Smith, 446 F.2d 341, 345, 347 (5th Cir. 1971).

### LEGALITY OF ARREST

■ Petitioner contends that his arrest on the misdemeanor charge was invalid under Fla.Stat. § 901.15(1), (1971) because it was made, not "immediately or in fresh pursuit" as the statute commands, but some five hours after the arresting officer had witnessed his public intoxication. Where the validity of a warrantless arrest by state officers for a state offense is challenged in a habeas corpus proceeding, state law governs so long as it comports with constitutional standards. Johnson v. Middlebrooks, 383 F.2d 386, 387 (5th Cir. 1967); Rodrigues v. Hanchey, 359 F.2d 724 (5th Cir. 1966); Lawrence v. Henderson, 344 F.Supp. 1287, 1290 & n.7 (E.D.La.1972); see Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Johnson v. United States, 333 U.S. 10, 15 n.5, 68 S.Ct. 367, 92 L. Ed. 436 (1948); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); cf. Lathers v. United States, 396 F.2d 524, 529–531 & n.5 (5th Cir. 1968).

■ But we have no occasion here to impose upon the courts of Florida our analysis of their law. The trial court found the facts and decided the state law question adversely to petitioner in ruling on his motion to suppress. Petitioner does not object to the completeness or fairness of the state court hearing and resultant findings of fact, although he disagrees factually with the result. Under these circumstances, a state court's findings and their application to state law is "presumed to be correct" on federal habeas corpus review pursuant to 28 U.S.C. § 2254(d). Hill v. Dutton, 440 F.2d 34 (5th Cir. 1971), cert. denied 404 U.S. 845, 92 S.Ct. 145, 30 L.Ed.2d 81 (1971); Braxton v. Wainwright, 473 F.2d 1371 (5th Cir. 1973).

### SUFFICIENCY OF TRIAL COURT HEARING

■ Application of the § 2254(d) presumption is not necessarily affected by the fact that this court has not been provided with the trial court record on the motion to suppress. Although a state appellate court's narrative recital of facts may not be the equivalent of findings made by the trial court, Beck v. Ohio, 379 U.S. 89, 93, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964), we think it may sometimes provide, if only in the rare case, a sound basis "for the District Court to reconstruct the findings of the state trier of fact" without the necessity of conducting a de novo hearing. Townsend v. Sain, 372 U.S. 293, 314, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963).

In ruling on petitioner's direct appeal, the Third District Court of Appeals held that "[t]he record supports the view of the trial court that the arrest for public drunkenness was postponed because it was impractical at the time the offense was committed in the presence of the officer, due to the emergency situation." Paulson v. State, 257 So.2d 303, 305 (Fla.App.1972). The fact that the court proceeded immediately to differentiate its own alternative holding emphasizes the reliability of its report of the trial court's decision. Further support derives from the nature of petitioner's factual disagreement with the trial court's findings. He suggests only that the indicia of his intoxication were insufficient to justify his arrest and that the emergency was too short-lived to prevent his prompt detention—precisely the issues adverted to by the appellate report of the trial court's ruling. If he does not in fact concede it, petitioner nowhere disputes the fact that his "claim was rejected on the merits" and that the trial court "actually reached and decided the issues of fact tendered" by him. Townsend v. Sain, 372 U.S. at 314,

83 S.Ct. at 757. Thus, we conclude by clear implication from the appellate report and the pleadings that the state court actually found the material facts in ruling on the motion to dismiss.

■ A hearing might nonetheless be necessary were it not for the circumstance that reconstruction of the trial court's findings of fact is here unobscured by the possibility that its ruling resulted instead from error in applying constitutional standards. The trial court had first to confront the question of the legality of the arrest under Fla. Stat. § 901.15(1), 1971. Assuming that the facts showed it to be illegal, there would have been no occasion to inquire whether such an arrest might nonetheless be constitutionally permissible. To assume, conversely, that constitutional standards are more demanding than those of the Florida law would be to presume unnecessarily that the state statute is unconstitutional on its face, contrary to the general rule that state statutes are presumptively constitutional. *Cf.* Wells v. Hand, 238 F.Supp. 779 (M.D.Ga.1965) affirmed sub nom. Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32 (1965); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963).

Assuming therefore, without deciding, that the statute is constitutional on its face, the question narrows to whether its application in this instance passed outside constitutional bounds. Yet even if it did, reconstruction of the trial court's findings is in no way blurred by the possible application of an erroneous standard: the fact findings made by the state court as it passed beyond the limits of constitutionality had still to accord with the prerequisites of the state statute. Because the Florida law requires the actual commission of a misdemeanor in the presence of the arresting officer, the state court's refusal to suppress required a finding that petitioner was actually intoxicated in the presence of the police. *See e.g.* City of Miami v. Clarke, 222 So.2d 214 (Fla.App.1969). The trial judge must also have found

that an emergency existed and that it, rather than a bad faith scheme to obtain petitioner's fingerprints or the pursuit of unrelated police activities, was the cause of the failure to arrest him on the spot. Otherwise, the delay in placing petitioner in custody could not have been squared with the statute's requirement that misdemeanor arrests be made, if not immediately, then "in fresh pursuit." *Cf.* Kirby v. State, 217 So.2d 619 (Fla.App.1969). Had the trial court credited any of the factual allegations petitioner now advances, therefore, it would have been compelled by state law to suppress the fingerprint evidence. Consequently, even assuming that the state court ultimately applied an incorrect constitutional standard to the statutory findings, its "view of the facts is plain" by necessary implication from the refusal to suppress. Townsend v. Sain, *supra* 372 U.S. at 314, 83 S.Ct. at 758.

■ Absent the constraints of the Florida statute, this case might nevertheless have required a hearing as one in which "the 'so-called facts and their constitutional significance [are] so blended that they cannot be severed in consideration.'" Rogers v. Richmond, 365 U.S. 543, 546, 81 S.Ct. 735, 742, 5 L.Ed.2d 760 (1961), *quoted in* Townsend v. Sain, 372 U.S. at 315, 83 S.Ct. at 758. But the statutory impetus to the trial court's findings permits this court to be more than "reasonably certain that the state trier would have granted relief if he had believed petitioner's allegations," and therefore that the trial court "in denying relief disbelieved these allegations." Townsend v. Sain, 372 U.S. at 315, 83 S.Ct. at 758. Moreover, although this case also presents a somewhat novel problem for decision, the dictates of state law prevent our reconstruction of the trial court's findings from entering the realm of speculation. There is only one fact which the trier might have believed while concluding, perhaps erroneously, that relief could constitutionally be denied; namely, that petitioner was not at all intoxicated at the time he was finally

taken into custody. Although such an allegation does not plainly appear from the pleadings, we can and will assume for the purposes of decision that the trial court's finding on this question was in petitioner's favor. Thus, under these circumstances a de novo hearing is neither mandatory under the guidelines enunciated by the Supreme Court in Townsend v. Sain, nor necessary. We therefore now turn to the question of the constitutionality of the use of petitioner's fingerprints, which were routinely taken after his arrest for public drunkenness, at his subsequent felony trial.

### CONSTITUTIONALITY

▉ It must be emphasized at the outset that the taking of fingerprints constitutes a seizure of evidence fully subject to the constraints of the fourth amendment. Supreme Court decisions "recognize no exception to the rule that illegally seized evidence is inadmissible at trial," and however probative and trustworthy it may be, "[f]ingerprint evidence is no exception to this comprehensive rule." Davis v. Mississippi, 394 U.S. 721, 724, 89 S.Ct. 1394, 1396, 22 L. Ed.2d 676 (1969). Thus, the taking of fingerprints during a detention based neither on a warrant nor on probable cause must be suppressed. *Id.*

▉ The fourth amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S.Const. amend. IV. Although the courts have commonly assumed that the validity of "routine" fingerprinting will stand or fall with the validity of the antecedent arrest, to do so may be to risk overlooking the fact that fingerprinting, no less than obtaining blood samples, constitutes a search of a "person." As such, the fourth amendment mandates, at least conceptually, a twofold inquiry: "whether the police were justified in requiring petitioner to submit to the [fingerprinting], and whether

the means and procedures employed in taking his [prints] respected relevant Fourth Amendment standards of reasonableness." Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L. Ed.2d 908 (1966). Absent some such unlikely innovation in fingerprinting techniques as might require the surgical removal of epidermal tissue, however, only the prior inquiry into the justification for compelling fingerprinting will ordinarily be of concern to the courts.

▉ To speak of the reasonableness of the fingerprinting "search" must not be to ignore or undercut the requirement of probable cause for the antecedent arrest and detention of the subject for that purpose. Thus, the reasonableness of the justification for fingerprinting turns on the existence of probable cause for the arrest. *Cf.* Schmerber v. California, 384 U.S. at 768–769, 86 S.Ct. 1826. To require less than probable cause for an arrest without warrant would only encourage law enforcement officers to avoid consulting an impartial judicial officer in advance of an arrest, since a warrant can only be issued upon probable cause. A lesser standard than that required for obtaining warrants would therefore erode fourth amendment safeguards and defeat the purposes which the exclusionary rule was designed to serve. Our inquiry must consequently focus on the existence or absence of probable cause for petitioner's arrest.

▉ Generally speaking, an arrest made without a warrant can pass constitutional muster only if:

"at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed or was committing an offense."

Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) *citing*

Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; *see also* Sexton v. Gibbs, 327 F.Supp. 134 (N.D.Tex.1970), *affirmed* 446 F.2d 904 (5th Cir. 1971), *cert. denied* 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972). Although the Supreme Court has said that misdemeanor arrests may be made without warrant only "for a crime committed in the presence of the arresting officer," Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948), no constitutional standard for the permissible length of delay in effecting the arrest has ever, to our knowledge, been articulated separately from that for felonies. The probable cause criterion is not, however, a rigid conception designed for mechanical application to the facts of every case, as the Supreme Court has been careful to emphasize:

> "The rule of probable cause is a practical, nontechnical conception affording the best possible compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Beck v. Ohio, 379 U.S. at 91, 85 S.Ct. at 226, *quoting* Brinegar v. United States, 338 U.S. at 176, 69 S.Ct. 1302.

■ Petitioner here concedes that he was initially questioned in an apartment house hallway at 1:15 a.m. and arrested some five hours later at approximately 6:15 a.m. Nor does he disclaim the emergency nature of the initial call to the apartment house of the arresting officer to aid a young lady who was seriously ill. The emergency occupied the arresting officer until petitioner was arrested upon stepping from his apartment in response to a knock on his door, as the trial court found. Although we assume that petitioner was no longer intoxicated at the time of his arrest, we accept the trial court's finding that the arresting officer had witnessed Paulson's prior intoxication when he was initially questioned.

Under these circumstances, we cannot say that petitioner's arrest on the misdemeanor charge was either unreasonable or without probable cause. It is difficult to conceive that the fourth amendment compromise of competing interests would require that an officer called to render emergency assistance who encounters illegal activity in the process must give up his mission of mercy if he wishes to apprehend the wrongdoer. To compel law enforcement officers to choose between abandoning their duty to enforce the law and abandoning a Good Samaritan rescue mission is to require too much. We think law abiding citizens will not be left to an officer's "whim or caprice" if probable cause in these circumstances is construed to require that an officer complete a good faith emergency mission without any unnecessary delay and return directly to the task of apprehending the wrongdoer. Because we hold that there was probable cause under the circumstances for petitioner's misdemeanor arrest, the use of fingerprints taken incident to that arrest was proper at his felony trial and his petition for habeas corpus relief must be denied. Therefore it is,

Ordered and adjudged that this petition be dismissed.