766 P.2d 298

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Gilbert SAAVEDRA, Defendant–Appellant.**

**No. 17471.**

Supreme Court of New Mexico.

Dec. 21, 1988.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, and Susan Gibbs, Asst. Appellant Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen. and Gail Mac-Questen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

Gilbert Saavedra was convicted of a 1982 felony murder and armed robbery, and was sentenced to life imprisonment plus 21 years, to be served consecutively. On appeal he raises two issues: first, that his third trial, which resulted in his conviction in 1987, subjected him to double jeopardy contrary to the fifth amendment of the United States Constitution and article II, section 15 of the New Mexico Constitution; second, that the consecutive sentences imposed by Judge Burt Cosgrove in 1987 violated his due process rights under the state and federal constitutions. Defendant was originally convicted on the same charges in 1983 and sentenced by Judge Patricia Madrid to a term of life imprisonment plus 21 years, to be served *concurrently.* We reversed his conviction and remanded for a second trial because evidence material to

his defense was improperly excluded and a State's witness improperly commented on Saavedra's previous felony conviction. *See State v. Saavedra*, 103 N.M. 282, 705 P.2d 1133 (1985).

*Double jeopardy.* On June 23, 1986, before Judge Cosgrove, Saavedra was brought to trial for the second time. A jury was impaneled, and heard testimony from a number of state witnesses. On June 30, temporary substitute counsel announced that Saavedra's attorney, Mr. Riggs, was striken with chicken pox and was unable to continue with the trial at that time. A letter was presented to the court from Riggs' doctor, stating that Riggs would no longer be contagious after July 4, 1986. The defendant requested a one week continuance, insisting that Riggs would be able to resume trial on Monday, July 7.

The prosecutor, Mr. Shane, informed the court that he was scheduled to leave Albuquerque on Thursday, July 10, to undergo back surgery. Shane told the court his scheduled surgery had already been postponed due to Saavedra's trial "about as much as it could be postponed." Shane also told the court, however, that he had been living with his back problems for two years and recognized his responsibility to prosecute the case to its conclusion. He contended a mistrial would prejudice the State's case. The defendant also strenuously objected to the declaration of a mistrial at that time, although he had twice before moved for a mistrial based on alleged irregularities in statements by the State's witnesses. These motions had been denied.

Shane estimated the completion of his case would take around a day and a half, and he anticipated calling one to four rebuttal witnesses. Riggs, through temporary substitute counsel, estimated the entire trial could be finished within three days. These assurances notwithstanding, Judge Cosgrove expressed doubts the case could be adequately completed within the three-day window between defense counsel's proposed return and the prosecutor's scheduled departure.

Judge Cosgrove also noted he had promised himself and his staff a vacation starting July 7, the day the defendant estimated trial could resume. He questioned whether a week's continuance would unduly inconvenience the jury; however, each of the jurors replied upon being questioned that the proposed schedule did not pose a problem. Judge Cosgrove instructed the attorneys to discuss scheduling problems with witnesses and asked the prosecutor to investigate further the possibility of postponing his operation. The judge then recessed the hearing, indicating he wanted to continue the discussion on the following day. Apparently, such a meeting did take place off the record. The court declared a mistrial for reasons of manifest necessity, and entered findings and conclusions to that effect on September 24, 1986. Pertinent to our discussion are the following findings and conclusions:

6. The Court was notified that Mr. Riggs was confined to his home and might require hospitalization, and his disease was contagious and that the Court was obligated to grant the Defendant a Continuance until Mr. Riggs' health was adequately restored to allow him to continue to represent the Defendant.

7. Due to the complexity of the case, the numerous witnesses and issues involved, including the history of the case, [and] the progress of the trial, neither the Defendant nor the State could have obtained substitute counsel which could have provided adequate assistance.

8. Mr. Shane, the Special Prosecutor, was suffering from a degenerative back condition and previously had major back surgery scheduled out-of-state, said surgery to occur July 11, 1986. Mr. Shane was scheduled to leave Albuquerque on July 10, 1986 and would not complete recovery until mid to late August, 1986.

9. It was doubtful that Mr. Riggs could return on Monday, July 7, 1986 in adequate health to undergo the strain of completing the State's Case–In–Chief, the Defense's Case–In–Chief, any rebuttal or sur-rebuttal, the preparation of jury instructions, closing arguments and

jury deliberations which circumstances required to be completed in three (3) days and to compel Mr. Riggs to do so may cause the defense to be ineffectively represented.

10. It was doubtful that Mr. Shane could adequately represent the State of New Mexico due to a certain amount of emotional trauma that would result from his imminent back surgery and the uncertainty of completing the Trial prior to his date of departure.

. . . .

12. The Trial Court concludes that due to the need for [a] Continuance by the Defendant and the scheduled vacation of the Court and Its staff on July 7, 1986 and Mr. Shane's major surgery that the Trial could not be completed by July 9, 1986 without substantial prejudice to the Defendant, State or both parties.

13. The Trial Court concludes that the ends of [public] justice would not be met in carrying this Trial to a conclusion at this time.

14. The Trial Court concludes that Manifest Necessity exists and that a Mistrial should be declared.

*Analysis.* Both the federal and state constitutions prohibit the state from twice subjecting a person to criminal prosecution for the same offense. U.S. Const. amend. V; N.M.Const. art. II, § 15.[1] When a criminal proceeding has been carried to completion, this protection is absolute: "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.'" *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (citation omitted).

■ The double jeopardy clause also protects a criminal defendant against being retried in some instances when the criminal proceeding was aborted before a final judg-

ment was obtained. Accordingly, it is said that "jeopardy" attaches when the jury is sworn in the first trial, *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and if the defendant objects to a mistrial he or she cannot be retried once jeopardy attaches, unless the mistrial was found to have been declared for reasons of "manifest necessity." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146 (1977).

■ As the term "manifest necessity" implies, the protection against retrial is not absolute when the trial process has been stopped short of a final judgment. When the defendant has been acquitted, the defendant's interest against further prosecution and the public's interest in finality both compel a bar against retrial; when the trial has been aborted before its conclusion, the defendant's valued right to have his or her case heard by the jury already impaneled is sometimes in conflict with the public interest in allowing the prosecutor one full and fair opportunity to present the state's case. "[A] mechanical rule prohibiting retrial whenever circumstances compel the discharge of the jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide." *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

■ Therefore, when retrial after declaration of a mistrial would not create unfairness to the accused, his interest against retrial may be subordinated to the public interest in substantive justice. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830. The subordination of a constitutionally protected interest, however, is not to be lightly undertaken, and the prosecutor must shoulder a heavy burden to justify the mistrial if the double jeopardy bar is to be avoided. *Id.* "Manifest" necessity has

---

1. The New Mexico constitutional protection against double jeopardy has been construed as identical to the federal constitutional protection under the fifth amendment. *State v. Rogers,* 90 N.M. 604, 566 P.2d 1142 (1977).

been interpreted as a "high degree" of necessity. *Id.* at 506, 98 S.Ct. at 830. Nonetheless, in some instances a reviewing court must afford substantial deference to the trial court's ruling. *Id.* at 507–511, 98 S.Ct. at 831–33. When, for example, the underlying issue involves a deadlocked jury or possible jury bias, the trial judge should be allowed broad discretion whether to declare a mistrial. In other instances, such as when the basis for the mistrial is the unavailability of key prosecution evidence or when there is reason to believe that the prosecutor is attempting to harass or gain a tactical advantage over the defendant, the strictest scrutiny is necessary. *Id.*

It is readily apparent that the present case falls somewhere in between these two extremes.[2] There has been no suggestion that the prosecution sought a tactical advantage through the declaration of a mistrial, and, indeed, the prosecutor was prepared to continue with the trial on July 7, hoping to finish before he was scheduled to leave Albuquerque on July 10. Under these circumstances, strict judicial review of the trial court's decision is inappropriate.

Nor, however, is this a case in which we must afford the trial court the same breadth of discretion as when the basis for the mistrial is a hopelessly deadlocked or biased jury. In this case there is not the danger, alluded to by the court in *Arizona v. Washington,* that a judge anticipating a double jeopardy bar because of second-guessing by a reviewing court would force a truly deadlocked jury to reach a decision. *Id.* at 507, 98 S.Ct. at 831.

The State argues that the prospect of a one-week continuance presented the judge with a problem of potential jury bias. Riggs' illness came near the end of the prosecutor's case, the State argues, and granting the continuance would have created a ten-day gap between the last testimony heard by the jury and testimony on July 7. Since a major issue in the case was the credibility of witnesses, a week's continuance could have substantially weakened the State's case by making the previous testimony of key State witnesses stale relative to the testimony of defense witnesses. Under these circumstances, the State concludes, it was not an abuse of discretion to declare a mistrial in lieu of granting the continuance.

We are not persuaded by this argument. Although the prosecutor brought the possibility of jury bias to the attention of the judge, the judge makes no mention of such a danger in his findings and conclusions. Reading the judge's findings and conclusions as a whole, we are convinced that the judge saw the problem before him as one of scheduling, not jury bias. *Arizona v. Washington,* 434 U.S. at 516–17, 98 S.Ct. at 835–36, allows a reviewing court to affirm a mistrial when the trial court does not clearly state its reasons, but a sufficient basis for the mistrial adequately appears on the record. In this case, however, the court did clearly state its reasons and appears not to have accepted the argument of the prosecutor. The only finding which mentions the nature of the case and progress of the trial, finding 7, analyzes these factors as affecting the adequacy of substitute counsel, not as creating likely jury bias. We do not believe that *Arizona v. Washington* allows us to disregard the judge's findings and glean hypothetical justifications from the record, particularly when the judge was in a better position than are we to decide what weight to accord these justifications. Moreover, the prosecution has the burden of showing that the possibility of jury bias was the basis for the judge's decision, and, as we have stated, the prosecution failed to meet this burden. *See id.* at 505, 98 S.Ct. at 830.

---

**2.** The state concedes, and we agree, that the vacation plans of the judge and his staff do not provide a justification for declaring a mistrial for reasons of manifest necessity. *See Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973) (previous personal commitments of trial judge do not justify declaration of a mistrial). While the judge may be correct in his assertion that every litigant believes his or her case to be of the greatest importance, here a jury had already been impaneled in a criminal proceeding and the constitutional protection against double jeopardy had already attached. We therefore disregard this reason and proceed to examine the judge's other justifications.

■ Because the judge perceived the problem facing him to be a scheduling problem, in many ways we are in no better or worse position to make the necessary estimates than was he. For this very reason, however, the judge's exercise of discretion should not be overruled absent some clear indication that he failed to engage in a "scrupulous exercise of judicial discretion," *United States v. Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, including due consideration of possible alternatives. *Id.* at 487, 91 S.Ct. at 558; *Dunkerley v. Hogan,* 579 F.2d 141 (2d Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); *State v. Messier,* 101 N.M. 582, 686 P.2d 272 (Ct.App.1984); *State v. DeBaca,* 88 N.M. 454, 541 P.2d 634 (Ct.App.), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1975).

Saavedra argues that the trial court abused its discretion in declaring a mistrial on June 30 because the judge failed to thoroughly explore such alternatives. Saavedra argues the judge should have granted the continuance instead of jumping to the conclusion that defense, counsel would not be up to the strain of continuing with trial. The trial court would have been in a better position to exercise its discretion on July 7. Moreover, Saavedra asserts, the judge should have required the prosecutor to tell the court unequivocally whether he was willing and able to reschedule his back surgery. Had the judge taken these steps, Saavedra argues, the apparent necessity for the mistrial might have been eliminated.

■ Although it may have been the better course, we do not believe that the Constitution required the trial court to grant the defendant's request for a one week continuance in order to make a more "scrupulous" choice than the one in fact made. *Cf. United States v. Jorn,* 400 U.S. at 487, 91 S.Ct. at 558 (when judge hastily declared a mistrial without listening to or considering alternatives, he abused his discretion). Here, Judge Cosgrove considered the alternatives to a mistrial, but rejected them. Reviewing the judge's decision in light of the record, we conclude that there are sufficient reasons presented to justify declaration of a mistrial, notwithstanding the fact that the judge would have been in a better position to assess the situation had he taken the steps suggested by the defendant.

The trial court was faced with an extremely complex rescheduling problem involving numerous witnesses, several from outside the state, and a prosecutor and defense attorney whose health problems might well have thwarted any solution short of a mistrial, or might have resulted in inadequate representation of either the State or the defendant. The judge noted, based on his experience, that when an attorney assures him that a matter will take three days to try, he finds it prudent to set aside six, and he therefore harbored serious doubts that so demanding a trial could be completed as anticipated even if Riggs' health permitted the trial to resume on July 7. We cannot say, based on the information available to the judge, that his estimate was unreasonable.

We note in so holding that a substantial number of courts which have considered the question have also held that the extended illness of one of the participants in a criminal proceeding justifies the declaration of a mistrial for reasons of manifest necessity. *See State v. Mendoza,* 101 Wis. 2d 654, 305 N.W.2d 166 (Ct.App.1981); *Commonwealth v. Thomas,* 346 Pa.Super. 11, 498 A.2d 1345 (Pa.Super.Ct.1985), *app. denied,* 514 Pa. 635, 522 A.2d 1105 (1987); *Glover v. United States,* 301 A.2d 219, 222 (D.C.1973); *Loux v. United States,* 389 F.2d 911 (9th Cir.), *cert. denied,* 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968); *People v. Castro,* 657 P.2d 932 (Colo.1983); *State v. Cole,* 286 Or. 411, 595 P.2d 466, *cert. denied,* 444 U.S. 968, 100 S.Ct. 458, 62 L.Ed.2d 381 (1979). *But see, Dunkerley v. Hogan,* 579 F.2d 141 (2d Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979).

*Due Process Violation.* Saavedra also contends that the imposition of consecutive sentences for felony murder and armed robbery after his 1987 conviction violated his due process rights under the rule announced in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). After his conviction in 1983, Saavedra was sentenced to life imprisonment plus 21 years, to be served concurrently.

In 1987, he was sentenced to identical terms but the sentences were to be served consecutively. Saavedra argues that this constitutes a more severe sentence and, under *Pearce*, raises a presumption of vindictiveness which is not rebutted by the reasons Judge Cosgrove gave for the consecutive sentences in 1987. We are convinced this case is controlled by *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). Under the rule announced there, Saavedra's argument fails.

*Pearce* set out a prophylatic rule designed to guard against judicial vindictiveness in the sentencing process when a criminal defendant has successfully appealed a conviction and has been retried and found guilty a second time. The *Pearce* rule recognizes that personal and institutional biases may lead a judge to impose a harsher sentence in response to the embarassment of reversal by an appellate court, the need to vindicate decisions made in the first trial, or other reasons. *Chaffin v. Stynchcombe*, 412 U.S. 17, 27, 93 S.Ct. 1977, 1983, 36 L.Ed.2d 714 (1973). In order to guard against the possibility of vindictive sentencing and to free the accused of apprehension of such vindictiveness, the *Pearce* court held that a presumption of vindictiveness arises when the second sentence is more severe than the first. *North Carolina v. Pearce*, 395 U.S. at 725–26, 89 S.Ct. at 2080–81. The State may rebut this presumption only by showing that the increased sentence was justified by evidence available at the second trial but not the first. *McCullough*, 475 U.S. at 141–44, 106 S.Ct. at 980–83.

▮ The Supreme Court has declined to apply this presumption, however, where there was no realistic possibility that the sentencer at the second trial would be motivated by vindictiveness. *See Moon v. Maryland*, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970) (where counsel for the defendant affirmatively conceded and the record made clear that a particular judge was not motivated out of vindictiveness, the *Pearce* requirements did not apply); *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (*Pearce* rule inapplicable under a two tier trial system allowing for de novo review as of right by

a different court); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed. 2d 714 (1973) (*Pearce* inapplicable where different juries passed sentence). In *McCullough*, the Court surveyed its previous decisions and held that a determination of whether the *Pearce* presumption was applicable depends on the facts of each case. Under the facts presented in *McCullough* itself, the Court held, the presumption was inapplicable for two reasons: first, because the trial judge herself granted the defendant's motion for a new trial based on prosecutorial misconduct; second, because pursuant to Texas law the defendant had been sentenced at his first trial by the jury, while at the second trial he chose to be sentenced by the judge. "The [*Pearce*] presumption is also inapplicable because different sentencers passed the varying sentences that McCullough received. In such circumstances, a sentence 'increase' cannot truly be said to have taken place." 475 U.S. at 140, 106 S.Ct. at 980. This language is clear and unambiguous. The fact that the sentencers are different, as they are in this case, is itself sufficient grounds to make the presumption of vindictiveness inapplicable. Any language to the contrary as may be found in the case of *State v. Sisneros*, 101 N.M. 679, 687 P.2d 736 (1984), decided prior to *McCullough*, is hereby overruled. While a defendant may still obtain relief if he can show actual vindictiveness on resentencing, *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984), in this case Saavedra has made no such claim and the record does not show that Judge Cosgrove acted vindictively. Therefore, we conclude that Saavedra's 1987 sentence did not violate his due process rights.

Based on the foregoing, the judgment of the district court is affirmed in its entirety.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.