872 P.2d 380

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Timothy DUNCAN, Defendant–Appellant.**

**No. 13981.**

Court of Appeals of New Mexico.

Feb. 8, 1994.

Certiorari Denied April 8, 1994.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*OPINION*

BLACK, Judge.

As a result of a night-long episode involving a co-defendant and two victims, Defendant was convicted of fourteen counts of aggravated burglary, kidnapping, false imprisonment, armed robbery, criminal sexual penetration, attempted criminal sexual penetration, and unlawful taking of a motor vehicle. After this Court reversed and remanded for a new trial, *State v. Duncan,* 113 N.M. 637, 830 P.2d 554 (Ct.App.1990), *aff'd,* 111 N.M. 354, 805 P.2d 621 (1991), Defendant was convicted of two counts of armed robbery. After the retrial, the State requested that the district court treat the armed robbery as a first degree felony pursuant to NMSA 1978, Section 30–16–2 (Repl. Pamp.1984). After this request was denied, the State sought sentence enhancements (based on Defendant's status as a habitual offender) pursuant to NMSA 1978, Section 31–18–17(D) (Repl.Pamp.1990). The habitual offender enhancement request was granted. The State had not sought either enhancement after the first trial.

Defendant argues that: (1) the habitual offender enhancement must be set aside because of prosecutorial vindictiveness; (2) the State failed to prove two of the prior felonies on which the habitual offender enhancement was based; (3) Defendant's fingerprints were taken without a warrant; (4) Defendant's sentence constitutes cruel and unusual punishment; (5) the exclusion of admissible evidence was error; (6) the admission of inflammatory evidence deprived Defendant of due process; and (7) amendment of the indictment was error. We affirm. The facts will be outlined as relevant to each point.

### I. *STANDARD OF REVIEW*

On claims of prosecutorial vindictiveness, the district court will be reversed only for an abuse of discretion. *See State v. Coates,* 103 N.M. 353, 358, 707 P.2d 1163, 1168 (1985). This standard is also the appropriate standard on the evidentiary issues raised by Defendant. *State v. Chamberlain,* 112 N.M. 723, 726, 819 P.2d 673, 676 (1991).

### II. *PROSECUTORIAL VINDICTIVENESS*

Defendant, citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), argues that the imposition of a harsher punishment after a successful appeal violates his right to due process of law. *Pearce,* in fact, dealt with an increased sentence after the defendant successfully appealed his prior conviction and was designed to guarantee that a defendant "be free[ ] of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080. Since Defendant in the present case was originally sentenced by Judge Mowrer and retried and sentenced by Judge Dal Santo in the second trial, there is little danger of vindictive sentencing and *Pearce* does not apply. *See State v. Saavedra,* 108 N.M. 38, 44, 766 P.2d 298, 304 (1988). Moreover, Defendant's first trial resulted in a sentence in excess of forty years. Even with the habitual offender enhancement, Judge Dal Santo's total sentence only amounts to thirty-four years. The *Pearce* presumption of vindictiveness does not apply when the sentence following the second trial

is less than the initial sentence. *State v. Lopez,* 99 N.M. 612, 613, 661 P.2d 890, 891 (Ct.App.1983); *see also United States v. Vontsteen,* 910 F.2d 187, 191–92 (5th Cir. 1990) (declining to extend *Pearce* to situations where overall sentence is not increased), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991).

Defendant further contends that, since the habitual offender enhancement is mandatory, this case is about "vindictive charging, not vindictive sentencing." Defendant argues an enhancement based on such alleged vindictive charging is barred by *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The defendant in *Blackledge* was originally convicted of a misdemeanor in a court of limited jurisdiction and subsequently exercised his statutory right to an appeal and trial de novo in a court of general jurisdiction. The prosecutor then obtained a felony indictment to which Defendant pleaded guilty. The Supreme Court reviewed its precedents and noted, "[t]he lesson that emerges from *Pearce, Colten [v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) ] and *Chaffin [v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) ] is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' " *Blackledge,* 417 U.S. at 27, 94 S.Ct. at 2102. The Supreme Court concluded that there was a "realistic likelihood" of vindictiveness in the factual situation presented by *Blackledge.*

Defendant argues that Judge Dal Santo found that there was both actual vindictiveness by the district attorney's office and that the facts in the present case give rise to a presumption of vindictiveness.

### A. *Actual Vindictiveness*

After the second jury trial, the assistant district attorney filed notice and supplemental information indicating that her office would seek to have Defendant sentenced as a first degree felon, as authorized by Section 30–16–2. At the hearing on the State's Section 30–16–2 request, Judge Dal Santo stated that, even though she had seen new evidence about the co-defendant, it was her conclusion Defendant was "largely responsible for all the events that occurred that evening." The judge stated she could not believe Defendant had harmed his benefactors and yet "not even today shown any remorse for that." Nonetheless, the judge indicated she was familiar with the decisions of the United States Supreme Court on prosecutorial vindictiveness and was concerned about the appearance of institutional vindictiveness by the district attorney's office. After citing evidence that could support a finding of vindictiveness, the judge said:

> The pre-sentence report in this case recommended that the Court impose a sentence of thirty-six years, two eighteen-year sentences consecutive to each other. This Court has found that the—that the sentence cannot be enhanced, since it was previously a nine-year sentence on each count. And the reason that I have found that is based on—I don't believe that that would be upheld. I really do not believe that that would be upheld on appeal.

After the district court refused to sentence Defendant as a first-degree felon, the State filed a supplemental information seeking to enhance Defendant's sentence as a habitual criminal, pursuant to Section 31–18–17(D). At the hearing on the State's motion to enhance Defendant's sentence as a habitual offender, the district judge again expressed concern over Defendant's robbery of persons who had befriended him and his apparent lack of remorse. Judge Dal Santo granted the habitual offender enhancement since the convictions "span[ned] a period of time as opposed to an enhancement of a particular conviction" and thus it was clear that vindictiveness was not the motivating factor.

■ A defendant who proves actual vindictiveness establishes a per se violation of due process. 2 David S. Rudstein et al., *Criminal Constitutional Law,* § 9.06[2], at 9–85 (1993). The district court in the present case recognized this and refused to sentence Defendant pursuant to Section 30–16–2 as a first degree felon based on the appearance of institutional vindictiveness in seeking to increase Defendant's convictions to the first degree. However, the district judge

made no such finding following the hearing on the habitual offender enhancement and proceeded to enhance Defendant's sentence under Section 31–18–17(D). Indeed, the prosecution has a statutory duty, "at any time, either after sentence or conviction, it appears that a person convicted of a noncapital felony is or may be a habitual offender ... to file an information charging that person as a habitual offender." NMSA 1978, § 31–18–19 (Repl.Pamp.1990). We cannot say the district court abused its discretion in failing to find actual vindictiveness in the actions of the district attorney's office in seeking the habitual offender enhancements. *See Coates,* 103 N.M. at 358, 707 P.2d at 1168.

### B.  *Presumption of Vindictiveness*

■ The federal courts have recognized a rebuttable presumption of vindictiveness whenever prosecutors increase the number and severity of charges after a defendant has asserted his legally protected rights. Rudstein, *supra,* § 9.06[2], at 9–91. While New Mexico courts have not yet applied such a presumption, *Coates,* 103 N.M. at 358, 707 P.2d at 1168, the decision of the New Mexico Supreme Court in *State v. Stevens,* 96 N.M. 627, 633 P.2d 1225 (1981), *cert. denied,* 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1371 (1982), is instructive in the present context. After a series of successively more serious indictments, Stevens was convicted of second-degree murder. On appeal, he argued the successive reindictments violated his right to due process. This Court overturned the conviction and the New Mexico Supreme Court granted certiorari. Our Supreme Court reversed and held no presumption of vindictiveness arose following the pretrial reindictments:

> We do not find at the pretrial stage the type of motivation sufficient to presume vindictiveness. Imposition of a pretrial presumption of vindictiveness would interfere with proper prosecutorial discretion. Prosecutors would be required to justify actions properly taken as adversaries but which may appear vindictive, adding additional burdens to the criminal justice system. Prosecutors might feel compelled to press the severest charges possible at the outset, to the detriment of defendants. *Id.*

The Court's language in *Stevens* is illuminating in the present case because the habitual offender enhancement issue was first raised with Defendant in the initial plea bargaining prior to the first trial. In September 1987, the assistant district attorney offered not to raise the habitual offender enhancement issue if Defendant agreed to plead guilty to certain counts "admit all three priors and plead to two of them." Defendant rejected this offer and proceeded to trial. Since the habitual offender enhancement was initially raised in the pretrial phase of the first trial, *Stevens* and *Saavedra* would seem to indicate no presumption of vindictiveness would arise when the State sought to enforce the habitual as threatened during plea bargaining. *See also Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (due process not offended when prosecutor carries out threat, made during plea negotiations, to reindict defendant on more serious charges); Bennett L. Gershman, *Prosecutorial Misconduct* § 4.4(b)(1)(A), at 4–36 (1993) ("Since *[United States v.] Goodwin* [457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)], virtually every court that has reviewed claims of vindictiveness in a pretrial plea bargaining context has rejected the claim.") (citations omitted).

Even if habitual offender enhancement had not been raised and spurned during plea bargaining, however, the assistant district attorney presented a reasonable explanation to rebut any presumption of vindictiveness. She testified that the habitual offender enhancement was not pursued after the first trial because Judge Mowrer stated he would not sentence Defendant to a longer term than his co-defendant who had already pleaded guilty and been sentenced to forty-four years. Judge Mowrer then sentenced Defendant to forty-and-one-half years, without any habitual offender enhancements. Courts in other jurisdictions have relied on similar evidence to dispel any presumption of vindictiveness when a habitual offender enhancement was sought. *See Jones v. State,* 540 N.E.2d 1228, 1229 (Ind.1989); *Raetzsch v.*

*State,* 709 S.W.2d 39, 41 (Tex.Ct.App.1986), *pet. for discretionary review ref'd,* 733 S.W.2d 224 (Tex.Crim.App.1987) (en banc) (per curiam).

### III. *DEFENDANT'S PRIOR FELO- NIES*

■ Defendant argues that even if the habitual offender enhancement charges were not a result of the State's vindictive conduct, the State did not sufficiently prove that two prior New Hampshire convictions were valid. We disagree.

The State offered certified copies of several of Defendant's New Hampshire burglary indictments and sentencing returns indicating Defendant had pleaded guilty to burglary and arson. Defendant admitted the guilty pleas, and his counsel stipulated that the fingerprints in the "pen packet" from New Hampshire were those of Defendant. Because the New Hampshire documents do not indicate Defendant was represented by counsel and he testified he "did not recall" talking to counsel before the pleas, Defendant contends there was no evidence they were counseled. Defendant did admit to having counsel, however, when he pleaded guilty to previous charges in both Otero and Bernalillo Counties. On cross-examination, Defendant also admitted that during the 1982 plea and sentencing in Bernalillo County, he had signed an agreement stating that the New Hampshire convictions were "valid and free from fundamental error."

Defendant counters that admissions made for purposes of plea bargaining are inadmissible as probative evidence under SCRA 1986, 11–410. However, since Defendant admitted to the New Hampshire crimes during direct examination in the trial from which he now appeals, his reliance on Rule 410 is misplaced.

■ By introducing evidence that Defendant was the same person who was convicted of the previous crimes, the State thus established a prima facie case. *See State v. Garcia,* 95 N.M. 246, 250, 620 P.2d 1271, 1275 (1980). Once the State's exhibits establish a prima facie case that a defendant has previously pleaded guilty to felonies, the defen-

dant is entitled to bring forth contrary evidence, but it is his burden to do so. *Id.; cf. State v. O'Neil,* 91 N.M. 727, 729, 580 P.2d 495, 497 (Ct.App.) (affirmative burden not on the state where the record in a habitual offender proceeding is silent as to the validity of the conviction), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). Based on Defendant's vague and somewhat inconsistent recollections about whether he had the advice of counsel before he pleaded guilty to the New Hampshire crimes, we do not find that the district judge abused her discretion in accepting Defendant's New Hampshire convictions as the basis for the habitual offender enhancements.

### IV. *THE TAKING OF DEFENDANT'S FINGERPRINTS*

■ Following Defendant's conviction, the State filed a motion to take fingerprint impressions. At the habitual offender hearing, Defense counsel argued no probable cause was established to take the fingerprints and they should therefore be stricken. This motion was denied.

Defendant relies on a Florida federal district court case, *Paulson v. Florida,* 360 F.Supp. 156 (S.D.Fla.1973), to argue that a search warrant was necessary before he was required to provide fingerprint samples for comparison to those in the New Hampshire "pen packet". Fingerprints, however, are characterized as nontestimonial evidence and the compulsory taking of fingerprints is thus not a violation of the Fourth Amendment. *State v. Jamerson,* 85 N.M. 799, 801, 518 P.2d 779, 781 (Ct.App.1974); *United States v. Edwards,* 885 F.2d 377, 385 (7th Cir.1989). Defendant's argument is therefore without merit.

### V. *CRUEL AND UNUSUAL PUNISH- MENT*

Defendant next argues that if his thirty-four-year sentence is affirmed, it is cruel and unusual punishment because it is disproportional to the forty-four-year sentence given his co-defendant. He argues that, since the co-defendant was "obviously the primary actor here" and pleaded guilty to four counts, and he received a sentence of forty-four

years, it is disproportional to permit enhancement of Defendant's sentence on two counts to thirty-four years.

The fixing of criminal penalties is a legislative function and the district court's authority to sentence is that which has been provided by law. *State v. Hovey*, 87 N.M. 398, 399, 534 P.2d 777, 778 (Ct.App.1975). The sentence for each count of armed robbery and the habitual offender enhancement falls within the statutory limits set by the New Mexico Legislature. The enhancement of the sentence under the habitual offender statute was within the district court's authority and does not constitute cruel and unusual punishment. *See State v. Gonzales*, 84 N.M. 275, 279, 502 P.2d 300, 304 (Ct.App.), *cert. denied*, 84 N.M. 271, 502 P.2d 296 (1972). The Defendant's claim is unfounded.

## VI. *THE EVIDENTIARY ISSUES*

### A. *Defendant's Fear of the Co–Defendant*

It is Defendant's theory that he committed the robberies at issue because he was afraid that his co-defendant would harm him if he did not "go along." In support of this theory, Defendant offered a rambling videotape of his co-defendant talking about his life, his sexual relationships with his mother, his cousin, his aunt, and references to the Northeast Heights rapist. The co-defendant also talked about his multiple personalities and referred to himself by different names on the video. The district court excluded the videotape on the grounds it was not probative of Defendant's state of mind during the crime, that it was likely to confuse the jury, and that it was more prejudicial than probative under SCRA 1986, 11–403.

Several witnesses for both the prosecution and defense testified concerning the co-defendant's behavior and demeanor. For example, the victim of Defendant's robbery, who was raped by the co-defendant, testified about how he said he was a warlock who had sold his soul to Satan and was inhabited by two demons. A second victim also testified about the co-defendant's behavior during the night-long assault. Defendant himself testified at length about his co-defendant's behavior before and during the incident. A prison

psychiatrist further testified that the mental health staff at the prison was afraid of the co-defendant and that the co-defendant did not want to leave prison because he was afraid of his own violence. Finally, the co-defendant's personal psychiatrist testified as to his multiple personalities and said if the co-defendant had threatened him he would consider it "very seriously."

It is not error to exclude evidence that is cumulative, confusing, or unduly prejudicial. *State v. Boeglin*, 105 N.M. 247, 253, 731 P.2d 943, 949 (1987). We therefore determine the evidence was properly excluded and find no abuse of discretion. *See In re Troy P.*, 114 N.M. 525, 529, 842 P.2d 742, 746 (Ct.App. 1992).

### B. *The Co–Defendant's Dangerous Disposition*

After the prosecution's case in chief, Defendant indicated his intention to call a defense attorney with "twenty years" experience, "someone who has seen literally thousands of defendants" and who would allegedly testify "that [the co-defendant] was the most dangerous he had ever seen." The district judge indicated she was not inclined to allow the defense attorney to testify as his testimony was irrelevant and she did not want to conduct a "mini-trial" on co-defendant's personality. The defense then rested without calling the defense attorney and volunteered that it no longer would seek to call him as a witness. As such, the Defendant cannot complain of this issue on appeal. A party cannot rely on a withdrawn objection to preserve error. *State v. Montoya*, 80 N.M. 64, 67, 451 P.2d 557, 560 (Ct.App.1968), *aff'd*, 80 N.M. 77, 451 P.2d 981 (1969). Even if Defendant had preserved such error, however, irrelevant evidence is not admissible. *See* SCRA 1986, 11–402.

### C. *Prior Acts of the Co–Defendant*

Defendant contends it was error to exclude the proffered testimony of a police detective concerning an incident in which "one of [the co-defendant's] personalities" held a woman and her children hostage in a motel room. The district court refused to admit this testimony on the ground the co-

**414**

defendant's other crimes and "identities" were confusing, irrelevant, and more prejudicial than probative under Rule 403.

Once again it is not error to exclude irrelevant or confusing evidence. It is difficult to see what probative value this evidence could have and it could clearly distract the jury from focusing on Defendant's innocence or guilt. We hold the district court did not err in excluding examination of the police detective as to other unrelated incidents in which the co-defendant was involved.

### D. *Defendant's Feelings Toward the Victim*

■ On direct examination, Defendant testified he loved the victim as a mother at the time of the incident. On cross-examination the State sought to impeach Defendant with a letter he wrote to the victim three years after the incident. Defense counsel then stated: "Your Honor, we would ask that if [the prosecutor] is going to question from [the letter], that we are going to request it be marked and admitted as an exhibit." On appeal, Defendant seeks to argue that admission of the letter was prejudicial error, which denied him the due process of law. However, Defendant failed to object to admission of the letter. Failure to object to the admission of evidence constitutes waiver. *State v. Lopez,* 105 N.M. 538, 734 P.2d 778 (Ct.App. 1986), *cert. quashed,* 105 N.M. 521, 734 P.2d 761, *and cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987).

The letter was eventually marked for purposes of identification, but the record fails to indicate it was admitted and shown to the jury. Rather, as we understand the record, the letter was merely used as a basis for questions by the prosecutor impeaching Defendant on his feelings toward the victim.

■ On redirect examination it was defense counsel who read from the letter: "Let me read the whole statement; see if you remember writing it. 'Since I am to suffer for crimes I did not commit, I pray to God that the souls of my tormentors suffer an even or greater measure than do I.'" During closing it was again defense counsel who raised the letter, and he was instructed he

could argue from the letter "but not emphasize it by presenting it because it was not admitted." Where a party allows use of evidence without objection, and even refers to the evidence, he has failed to preserve any error in the admission of such evidence. *See DeMatteo v. Simon,* 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct.App.1991) (to preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling by the trial court on the same grounds argued in the appellate court).

### VII. *THE AMENDMENT OF THE IN-DICTMENT*

■ Finally, Defendant argues that he was denied due process because of the way in which the indictment was amended. Defendant states that at the first trial he was convicted of some counts of criminal sexual penetration but acquitted on others. On retrial, he argues, it was not clear which charges of criminal sexual penetration would be retried. This argument lacks merit for two reasons. First, Defendant failed to object to the amendment of the indictment or to make any record below regarding this contention so it is not preserved. *See Lopez,* 105 N.M. at 546, 734 P.2d at 786. Second, since Defendant was acquitted of all criminal sexual penetration charges in the second trial, he suffered no prejudice as a result of any alleged error in amending the indictment. *See State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972).

### VIII. *CONCLUSION*

The district court did not abuse its discretion in rejecting Defendant's claim of prosecutorial vindictiveness. The court did not find actual vindictiveness, and we do not believe a presumption of vindictiveness arises when the prosecutor seeks the habitual offender enhancement she threatened in pretrial plea bargaining. Even if such a presumption should apply, we believe the evidence that the habitual offender enhancement was not requested after the first trial because of the trial judge's indication he would not enhance Defendant's sentence is sufficient to rebut such presumption. Because Defendant admitted his prior felonies

during direct examination by his own counsel, we find no merit in Defendant's argument that they were not properly established. Defendant's arguments regarding cruel and unusual punishment or evidentiary error have no merit. Finally, we do not find evidence that Defendant raised the issue of the amendment of the indictment, but, even if he had, we fail to see how Defendant could be prejudiced since he was acquitted of all charges of criminal sexual penetration in the second trial.

Defendant's convictions and sentence are affirmed.

IT IS SO ORDERED.

BIVINS, J., concurs.

CHAVEZ, J., concurs in part, dissents in part.

CHAVEZ, Judge (concurring in part, dissenting in part).

I dissent from the majority opinion on the issue of prosecutorial vindictiveness because: 1) the habitual enhancement was not brought in the first trial; and 2) the judge had already found prosecutorial vindictiveness in not allowing Defendant to be sentenced as a first degree felon.