**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-028

Filing Date: February 17, 2010

Docket No. 28,478

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

WILLIEMINA YAZZIE, aka
WILHEMINA YAZZIE,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Mark A. Macaron, District Judge

Gary K. King, Attorney General
Santa Fe, NM

Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM

Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

## OPINION

**VIGIL, Judge.**

**{1}** The metropolitan court judge (trial court) sua sponte declared a mistrial in Defendant's jury trial for battery on a household member after defense counsel asked Victim

on cross-examination if he had pleaded guilty to battering Defendant. Before Victim answered, and without considering an alternative, the trial court declared a mistrial. The question presented in this case is whether Defendant's subsequent trial subjected her to double jeopardy in violation of the Fifth Amendment. We conclude that there was no manifest necessity to declare a mistrial. Accordingly, we reverse and remand with instructions to set aside Defendant's conviction.

## I.    BACKGROUND

**{2}** The Albuquerque Police Department was dispatched to Defendant's home to investigate a domestic disturbance call. Upon arrival, the officer was admitted to the home by Victim, Defendant's boyfriend and the father of one of her children. While disputing what initiated the argument, they both agreed that at some point Defendant struck Victim, and Defendant was charged with battery on a household member. NMSA 1978, § 30-3-15 (2001) (amended 2007 and 2008).

**{3}** Defendant's first trial was before a jury. During opening statements, defense counsel stated the evidence would show that Victim grabbed and pushed Defendant first, and Defendant struck Victim with just enough force to extricate herself from the situation, while acting in self-defense. Victim was the State's first witness. Victim testified that on the night of the incident, Defendant was violent toward him by striking him on his face and body with closed fists and throwing objects at him. Victim also denied striking Defendant during the incident.

**{4}** Defense counsel then proceeded to cross-examine Victim and the following exchange took place:

> Defense counsel:    She's [Defendant] the violent one, right?
>
> Victim:    If that's the question, yes.
>
> Defense counsel:    You've never been violent with her?
>
> Victim:    We had an argument, but yes, it wasn't violent, it was just I grabbed her hand, and that was it.
>
> Defense counsel:    And in fact you pled guilty to battery on a household member?

The prosecutor objected before Victim answered and a bench conference outside the hearing of the jury followed. After the bench conference, defense counsel asked, "So, in fact, sir you in 2000 pled guilty to battery on a household member for battering [Defendant]?" The prosecutor again objected, stating that the question was "prejudicial, not relevant to the matter at hand, and it certainly exceeds the scope of a direct examination." After another

2

bench conference, the trial court excused the jury.

**{5}** Outside the presence of the jury, the prosecutor argued that the question was improper due to a lack of foundation, lack of relevance, and because the question exceeded the scope of the direct examination. Defense counsel responded that the question was proper because it related to Defendant's state of mind, namely her fear of Victim because of the past battery, and also to impeach Victim's contention that Defendant had been the violent one during the incident. The State replied that no evidence of a prior conviction had been produced. After additional argument, the trial court called a recess and retired to chambers.

**{6}** Upon returning to the bench after the recess, the trial court ruled that Rule 11-609 NMRA was determinative and that Rule 11-404 NMRA was inapplicable, reasoning, "Since the impeachment was with the conviction of a crime, 609 applies, not 404." Under Rule 11-609, the trial court said, only convictions for crimes punishable by a jail sentence of one year or more are admissible to impeach a witness. The trial court then declared a mistrial on its own motion. It reasoned that because defense counsel had "stated that [Victim] was convicted of a battery in metropolitan court, . . . the crime could not have been over a year, it's an improper impeachment, [and] the court is declaring a mistrial for the statements because we can't put that cow back in the barn." Defendant objected, asserting that Victim's testimony had opened the door to the question, and the trial court responded, "you've made your record; I've declared a mistrial; I found that it was improper."

**{7}** Defendant's case was again set for trial, and defense counsel filed a motion to dismiss, arguing Defendant's double jeopardy right barred retrial. The trial court denied the motion after a hearing, ruling that although it did not explicitly find manifest necessity to declare the mistrial, such a finding was not necessary and that the mistrial was appropriate because defense counsel's question was improper. Specifically, the trial court stated that while specific instances of Victim's conduct might be admissible to show Defendant's fear of Victim, the question concerned a conviction which required a Rule 11-609 analysis to determine its propriety. Defendant was then convicted in a bench trial in metropolitan court, and the district court affirmed in an on-the-record appeal.

**{8}** Defendant raises three arguments on appeal. First, Defendant argues that evidence of Victim's prior domestic violence incident was admissible either to impeach his credibility, or in support of Defendant's theory of self-defense. Defendant also argues that the State failed to prove beyond a reasonable doubt that she did not act in self-defense. Third, Defendant argues that there was no manifest necessity for a mistrial, and the subsequent retrial violated her constitutional right prohibiting double jeopardy. Because we agree with Defendant on the double jeopardy issue, we do not address her other arguments.

## II.     ANALYTICAL FRAMEWORK AND STANDARD OF REVIEW

**{9}** The United States Constitution protects an accused from being tried twice for the same offense. U.S. Const. amend. V. This protection attaches, in a jury trial, when the jury

3

is sworn. *Illinois v. Somerville*, 410 U.S. 458, 467 (1973). Thus, once a jury has been selected and sworn, a criminal defendant has a vested right to have her guilt or innocence decided by that jury. *See Arizona v. Washington*, 434 U.S. 497, 503 (1978) (stating that the constitutional protection against double jeopardy recognizes a defendant's "valued right to have his trial completed by a particular tribunal" (footnote omitted) (internal quotation marks omitted)); *State v. De Baca*, 88 N.M. 454, 459, 541 P.2d 634, 639 (Ct. App. 1975) (recognizing a defendant's interest "in ending the dispute then and there with an acquittal"). The double jeopardy interest of a defendant is significant when "the government, through the prosecution or the court, is the moving party . . . because he or she has not voluntarily surrendered it, and the government is held to a strict standard of necessity in aborting the trial and requiring the defendant to start over." *County of Los Alamos v. Tapia*, 109 N.M. 736, 743, 790 P.2d 1017, 1024 (1990). "[C]ourts should be most reluctant to declare a mistrial when the defendant is not the movant." *State v. Litteral*, 110 N.M. 138, 142, 793 P.2d 268, 272 (1990). Any doubt is resolved "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." *Downum v. United States*, 372 U.S. 734, 738 (1963) (footnote omitted) (internal quotation marks and citation omitted); *see also Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) ("[T]he power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." (internal quotation marks and citation omitted)). Thus, the circumstances in which a court may declare a mistrial and thereby force a defendant to stand trial a second time before a second fact finder for the same offense are limited.

**{10}**    When a mistrial is declared over a defendant's objection and the jury is discharged, the double jeopardy protection generally prohibits a defendant from being retried for the same offense "unless the mistrial was found to have been declared for reasons of manifest necessity." *State v. Saavedra*, 108 N.M. 38, 41, 766 P.2d 298, 301 (1988) (internal quotation marks and citation omitted). "[M]anifest necessity must be the basis" wherever the mistrial is a result of a sua sponte judicial decision. *State v. Messier*, 101 N.M. 582, 584, 686 P.2d 272, 274 (Ct. App. 1984); *State v. Salazar*, 1997-NMCA-088, ¶ 6, 124 N.M. 23, 946 P.2d 227 (reiterating manifest necessity is required for the retrial of a defendant); *see also United States v. Simpson*, 94 F.3d 1373, 1376 (10th Cir. 1996) ("When a mistrial is declared without the  defendant's consent, the Double Jeopardy Clause of the Fifth Amendment bars the retrial of the defendant unless there was 'manifest necessity' for the mistrial."). The manifest necessity requirement ensures that a defendant's important constitutional protection against double jeopardy yields to the public interest only when there is sufficient reason to do so. As first explained by the Supreme Court of the United States:

> [T]he law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the

power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes[.]

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).

**{11}** To say that a mistrial is required because of "manifest necessity" means that in order to preserve the ends of public justice, it is clear and evident that terminating the trial is necessary because of something extraordinary which occurred in the trial. *See* Black's Law Dictionary 1131 (9th ed. 2009) (defining "manifest necessity" as "[a] sudden and overwhelming emergency, beyond the court's and parties' control, that makes conducting a trial or reaching a fair result impossible and that therefore authorizes the granting of a mistrial").

**{12}** When determining if manifest necessity justified the mistrial, a reviewing court must look to the record to determine whether the stated reasons are sufficient to usurp the defendant's double jeopardy right in light of the public interest in adjudicating the accused, *Washington*, 434 U.S. at 514-16, and whether the trial judge considered less severe alternatives to declaring a mistrial. *See De Baca*, 88 N.M. at 460, 541 P.2d at 640 (reasoning that "the trial court clearly has some duty to . . . inquire" as to the possible alternatives to a mistrial); *see also Callaway v. State*, 109 N.M. 416, 417, 785 P.2d 1035, 1036 (1990) (stating that the trial court failed to consider alternatives to a mistrial). While an explicit finding of manifest necessity with an explanation of reasons is not constitutionally required, the basis for the trial court's ruling must be adequately disclosed by the record. *Washington*, 434 U.S. at 517-18; *Saavedra*, 108 N.M. at 42, 766 P.2d at 302.

**{13}** The test described in *Sanchez v. United States*, 919 A.2d 1148, 1151 (D.C. Cir. 2007), succinctly and accurately states the two requirements which must be satisfied on appeal.

> First, the circumstances necessitating the mistrial must be extraordinary ones, sufficient to override the defendant's double jeopardy interests. Second, the trial judge must determine whether an alternative measure–less drastic than a mistrial–can alleviate the problem so that the trial can continue to an impartial verdict.

*Id.* (internal quotation marks and citation omitted). The state bears a heavy burden to demonstrate a manifest necessity for the mistrial when the defendant objects to the mistrial and it seeks to prosecute a defendant a second time for the same offense. *See, e.g.*, *Washington*, 434 U.S. at 505 (stating that in view of the importance of the constitutional protection against double jeopardy, the prosecutor must shoulder the burden of justifying the mistrial if the double jeopardy bar is to be avoided); *Saavedra*, 108 N.M. at 41-42, 766 P.2d at 301-02 (explaining the subordination of a constitutionally protected interest is not to be lightly undertaken, and the prosecutor must shoulder a heavy burden to justify the mistrial if the double jeopardy bar is to be avoided); *Messier*, 101 N.M. at 584, 686 P.2d at 274

(stating that when a defendant raises the issue of double jeopardy, the burden rests on the state to show the existence of manifest necessity to justify the mistrial declaration). We resolve any doubt about whether a mistrial was warranted in Defendant's favor. *Sanchez*, 919 A.2d at 1151.

### III. MANIFEST NECESSITY WAS ABSENT FROM THIS CASE BECAUSE THE CIRCUMSTANCES WERE NOT EXTRAORDINARY AND THE TRIAL COURT FAILED TO CONSIDER ALTERNATIVES LESS DRASTIC TO MISTRIAL

**{14}** No actual evidence was introduced before or considered by the jury as a result of the question which prompted the mistrial. Defense counsel asked Victim if he had pled guilty to battery on a household member, and the prosecutor objected to the question before Victim answered. The trial court then ordered the mistrial without the question ever being answered.

**{15}** Thus, the first question presented to us under *Sanchez* is whether merely asking the question was sufficiently prejudicial to the State's right to a fair trial to warrant ordering a mistrial over Defendant's objection. "[T]he error must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way except by grant of a mistrial." *Cardine*, 283 S.W.3d at 647 (alteration omitted) (emphasis omitted) (internal quotation marks and citation omitted). The State fails to bring to our attention any case in which the mere asking of a question by defense counsel was itself deemed to be sufficiently egregious to warrant ordering a mistrial over the defendant's objection. We conclude that simply asking Victim whether he had pled guilty to battery on a household member was not an error of such a character and magnitude as to deprive the State of a fair trial. *See See State v. Casteneda*, 97 N.M. 670, 674, 642 P.2d 1129, 1133 (Ct. App. 1982) ("Since the question [defense counsel objected to] was not answered and there was no request that the jury be admonished to disregard the inquiry, no error existed."); *Commonwealth v. Rivera*, 715 A.2d 1136, 1139 (Pa. Super. Ct. 1998) ("[W]e cannot agree that the *question* [without an answer from the witness] was so highly prejudicial as to give rise to a finding of manifest necessity.").

**{16}** The State relies exclusively on *Litteral*. In *Litteral*, defense counsel inquired into past convictions of the state's key witness, the latest being twenty-five years prior. 110 N.M. at 140, 793 P.2d at 270. The trial court in *Litteral* permitted defense counsel to continue to question the witness after a bench conference, reserving its ruling on the state's objection until both parties had an opportunity to research the issue and consider whether a curative instruction would be appropriate. *Id.* at 140-41, 793 P.2d at 270-71. After both sides had an opportunity to present their arguments the following day, the trial court declared a mistrial at the state's request based on manifest necessity arising from the prejudice to the state and immediately impaneled a new jury for the second trial. *Id.* at 141, 793 P.2d at 271. The second jury convicted the defendant, and he appealed, contending that manifest necessity did not justify the mistrial. *Id.* at 140-41, 793 P.2d at 270-71.

6

**{17}** Unlike the case before us, the trial court in *Litteral* considered whether an alternative to a mistrial such as an admonition or curative instruction to the jury would be appropriate in the circumstances. *Id*. at 141, 793 P.2d at 271. Our Supreme Court agreed with the trial court that because the evidence was inadmissible and concerned the state's main witness, the state was prejudiced to the point that an admonition or curative instruction would not have cured the harm that had already been done, and concluded the trial court properly ordered the mistrial over the defendant's objection. *Id*. at 142, 793 P.2d at 272. Thus, to the extent *Litterall* may suggest that merely asking an improper question may constitute a sufficient trigger for a mistrial, it is distinguishable from the present case, because in *Litteral* the trial court actually considered alternatives to a mistrial and found them ineffective to cure the prejudice. We therefore turn our attention to the second question under *Sanchez*: whether the trial court in this case considered and determined whether an alternative, less drastic to a mistrial, could alleviate the prejudice which resulted from merely asking the question.

**{18}** The facts of this case are more analogous to *State v. Sedillo*, 88 N.M. 240, 539 P.2d 630 (Ct. App. 1975). After a police officer had given approximately two and one-half hours of testimony, defense counsel told the officer in his re-cross examination, "Officer, I have a licensed lie detector man waiting[.]" *Id.* at 241, 539 P.2d at 631. The prosecutor immediately objected, and following a bench conference, the trial court sua sponte declared a mistrial and discharged the jury. *Id.* We held that the defendant's double jeopardy right was violated when he was brought to trial a second time on the same charges. *Id.* at 242-43, 539 P.2d at 632-33. We first concluded that an isolated reference to lie detectors was not the type of conduct that was sufficiently egregious of itself to prohibit the state from obtaining a fair trial. *Id.* Furthermore, it did "not appear that any effort was made to cure the error by instruction to the jury." *Id.* at 243, 539 P.2d at 633. Therefore, we concluded, the trial judge had not properly made an effort to assure that there was a manifest necessity for the sua sponte declaration of the mistrial.

**{19}** There is nothing in the record in the present case indicating that the trial court considered any alternative to declaring a mistrial. For this additional reason, manifest necessity did not justify the mistrial order. *Id.* ("It does not appear that any effort was made to cure the error by instruction to the jury."); *People v. Segovia*, 196 P.3d 1126, 1133-34 (Colo. 2008) (holding no manifest necessity to declare mistrial "even assuming the question was improper" because in part, the trial judge failed to consider a "curative instruction reminding jurors that only answers to questions, and not the questions themselves, are evidence"); *Hubbard v. State*, 909 A.2d 270, 281 (Md. 2006) ("If there was no reasonable alternative, ordinarily the mistrial is manifestly necessary, and retrial is not barred by double jeopardy principles. If there is a reasonable alternative, the mistrial is not manifestly necessary, and a defendant cannot be retried."); *Commonwealth v. Balog*, 576 A.2d 1092, 1097-98 (Pa. Super. Ct. 1990) ("[T]he trial court's failure to consider the less drastic alternative of curative instructions shows that the court did not adequately consider the importance to the defendant of being able, once and for all, to have his trial completed by a particular tribunal.").

7

**CONCLUSION**

**{20}** We hold that the mistrial order was not supported by manifest necessity and that Defendant was tried twice for the same offense in violation of her constitutional right to be free from double jeopardy. Consequently, we need not consider her remaining arguments or additional issues at this time. The case is remanded with instructions to set aside Defendant's conviction.

**{21}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for _State v. Yazzie_, No. 28,478**

| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SS | Sua Sponte Issue on Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CU** | **COURTS** |
| CU-ME | Metropolitan Court |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DO | Domestic Violence |
| CL-SD | Self-defense |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MT | Mistrial |
| CA-PC | Prior Convictions |
| | |
| **JD** | **JURISDICTION** |

| | |
|---|---|
| JD-AJ | Appellate Jurisdiction |
| JD-DC | District Court |
| JD-ME | Metropolitan Court |
| | |
| **EV** | **EVIDENCE** |
| EV-IM | Impeachment |