This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              NO.   28,258

**ADAN M. CARRILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Sante Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Adan M. Carrillo (Defendant) appeals from his convictions for two counts of criminal sexual penetration of a minor (CSPM) and one count of criminal sexual contact of a minor (CSCM). Defendant's first trial resulted in a mistrial due to manifest necessity. His second trial resulted in the convictions that he has appealed. Defendant argues that the district court (1) deprived him of his constitutional right to present a defense by improperly excluding testimony regarding Victim's father's sexual misconduct; (2) subjected him to double jeopardy through his two convictions for criminal sexual contact of a minor; and (3) improperly granted a mistrial at the first trial, thereby, making his subsequent conviction void. We address each argument in turn, discussing the pertinent facts as needed.

## I. DISCUSSION

### A. The Testimony Was Properly Excluded

Defendant contends that the district court wrongfully excluded testimony about Victim's father's past sexual misconduct. "The trial court's admission or exclusion of evidence is reviewed on an abuse of discretion standard." *State v. Johnson*, 2010-NMSC-016, ¶ 40, 148 N.M. 50, 229 P.3d 523. "It is within the discretion of the trial court to evaluate the relevance of evidence." *State v. Duffy*, 1998-NMSC-014, ¶ 31, 126 N.M. 132, 967 P.2d 807. "An abuse of discretion occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case. We

cannot say the trial court abused its discretion . . . unless we can characterize [its ruling] as clearly untenable or not justified by reason." *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602 (alterations in original) (internal quotation marks and citation omitted).

"The proponent of the evidence bears the burden of affirmatively demonstrating its relevance." *Duffy*, 1998-NMSC-014, ¶ 31. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401 NMRA. "Relevancy is that which tends to establish a material proposition." *State v. Romero*, 86 N.M. 99, 102, 519 P.2d 1180, 1183 (Ct. App. 1974).

At trial, Defendant offered to introduce the testimony of three witnesses whose testimony was offered to show that Victim's father had a pattern of molesting family members. Defense counsel described the evidence as "a family secret that was not brought forth to [the] authorities[.]" The younger sister of Victim's father would have testified that from ages six to seven years old, she was sexually molested by Victim's father. Subsequently, both she and Victim's father received counseling for sexual abuse. The district court determined that the incidents happened eighteen to nineteen years ago when Victim's father was thirteen or fourteen years old. In addition,

defense counsel proffered the testimony of a second witness, who would testify that Victim's father molested him when he was nine to ten years old, about seventeen to eighteen years ago. Last, defense counsel offered testimony from the half-niece of Victim's father, who was prepared to testify that as adults, Victim's father had groped her and attempted to have sex with her while he was intoxicated. Defense counsel explained that he offered this testimony to rebut the State's evidence that Victim began to have nightmares after Defendant started sexually molesting her. The nightmares were at issue because they led Victim to disclose the abuse to a caregiver. Defense counsel argued that the testimony "would establish that [the nightmares] started prior to the dates listed by the State." Defense counsel asserted that "[its] purpose was to show a pattern that has gone [on] from [eighteen] years ago to the present day[.]" We interpret the evidence as serving two purposes: (1) to indicate that Victim's nightmares had begun before the time that Victim says she was abused by Defendant and (2) to imply that Victim's molestation was attributable to her father. Defendant did not argue the latter.

After hearing arguments from Defendant, the district court denied admission of this testimony, stating that the older incidents were "uncharged prior acts that occurred [seventeen] to [nineteen] years ago involving [Victim's father], when he was allegedly [thirteen] or [fourteen years old]." The court then found that the later adult

incidents "involve adult activities, and [the court does] not see . . . relevant in this matter at this point in time . . . alcohol[-]related activities of adults." Furthermore, the court stated that "[o]bviously[, defense counsel] can inquire into [the nightmares] and establish who had custody of [Victim] at this earlier date of the nightmares and whether or not . . . Defendant had significant access. . . . [T]hat is [a] perfectly appropriate inquiry in this matter."

We conclude that the district court did not abuse its discretion in denying admission of the above-described testimony. At issue was whether the testimony had a tendency to make the fact that Victim's nightmares corresponded with Defendant's molestation more or less true. Here, the connection between the proffered testimony and the nightmares was too attenuated to be relevant. The testimony from Trevino and Carrillo described uncharged conduct occurring seventeen to nineteen years prior to trial. These incidents do not demonstrate that Victim was having nightmares prior to the molestation as Defendant sought to show. Rather, they show that Victim's father may have molested two family members when he was a minor. In addition, the testimony regarding Victim's father as an adult groping and attempting to have sex with another adult while intoxicated also fails to disprove the fact that Victim began having nightmares when she was molested by Defendant as the incidents do not

involve children. We agree that the alcohol-related activities of adults are irrelevant to the issue of Victim's nightmares.

Since the testimony was with regard to incidents too attenuated in time and subject matter, we conclude that the district court properly excluded the testimony offered by Defendant.

**B.    Double Jeopardy**

Defendant contends that he was subjected to double jeopardy by being charged with two counts of criminal sexual penetration of a minor because the jury was given "carbon copy" jury instructions that did not distinguish the first count from the second. We review constitutional issues regarding double jeopardy violations under a de novo standard of review. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. In *Swafford v. State*, our Supreme Court enumerates three separate protections created by the double jeopardy prohibition, which include protection "against a second prosecution for the same offense after acquittal[,] against a second prosecution for the same offense after conviction[, a]nd . . . against multiple punishments for the same offense." 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (internal quotation marks and citation omitted). There are two types of cases involved in the double jeopardy prohibition against multiple punishments: "cases in which a defendant has been charged with multiple violations of a single statute based on a

6

single course of conduct, known as 'unit of prosecution' cases; and cases in which a defendant is charged with violations of multiple statutes for the same conduct, known as 'double-description' cases." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (citation omitted). The case at hand is a unit of prosecution case as Defendant was charged with multiple violations of the same statute for conduct that he contends was unitary.

In *State v. Dombos*, 2008-NMCA-035, 143 N.M. 668, 180 P.3d 675, we dealt with a similar situation "when two identical instructions were submitted to the jury based on two counts of attempted [criminal sexual penetration (CSP),] . . . both of which were alleged to have occurred" during the same time period. *Id.* ¶ 20. There, we determined that, through testimony, the victim "distinguished each attempt by time and circumstance, and she described intervening events." *Id.* ¶ 22. We upheld the defendant's convictions for the multiple counts of CSP and found that the carbon copy jury instructions did not violate double jeopardy rights "because the incidents were separated by time and intervening events." *Id.* ¶ 23.

Similarly, in *State v. Martinez*, 2007-NMCA-160, ¶¶ 4-17, 143 N.M. 96, 173 P.3d 18, we upheld the defendant's convictions for CSPM when the jury was given carbon copy instructions as to multiple counts of CSPM. There, the victim "testified to the particulars" of each incident, giving specific details and distinguishing when the

events took place. *Id.* ¶¶ 12-13, 16, 17. In addition, the defendant had admitted to having sexual intercourse with the victim. *Id.* ¶ 14. We determined that double jeopardy was not violated because substantial evidence supported each count, and "[t]he fact that some incidents were instructed identically does not change this conclusion." *Id.* ¶¶ 14, 17.

The central issue here is whether proof of the two counts of CSPM was separate and distinct, so the jury could distinguish between the counts and convict on each individually. "Conduct is not unitary if sufficient indicia of distinctness separate the transaction into several acts. In making this determination, we evaluate separations in time and space as well as the quality and nature of the acts or the results involved." *State v. Montoya*, 2011-NMCA-___, ¶ 31, ___ N.M. ___, ___ P.3d ___ (No. 28,881, May 27, 2011) (internal quotation marks and citation omitted). As we have stated in *State v. Salazar*, "if there was sufficient evidence from which the jury could have found that each act was in some sense distinct from the other, then the conduct was not unitary." 2006-NMCA-066, ¶ 31, 139 N.M. 603, 136 P.3d 1013.

In this case, the State failed to provide evidence that Defendant's conduct was not unitary. Victim, who was seven years old at the time of the trial, testified generally that she was repeatedly forced to engage in fellatio with Defendant. Victim

8

testified that Defendant "[p]ut his private in [her] mouth" more than once. The direct examination of Victim by the State went as follows:

Q[:] How often would this happen?

A[:] It happened a lot of times.

Q[:] Was it more than once?

A[:] Yes.

Q[:] More than twice?

A[:] Yes.

Q[:] More than three times?

A[:] Yes.

The State never asked Victim about specific encounters, nor did the State attempt to elicit testimony from Victim that would distinguish one encounter from another by a difference in time, place, or conduct. Unlike the evidence presented in *Dombos* or *Martinez,* nothing indicated that the encounters with Defendant were separate and distinct besides Victim's testimony that the sexual abuse happened multiple times. In failing to distinguish one instance from another, Defendant could potentially have been convicted twice for the same conduct, subjecting him to double jeopardy. *See State v. Garcia*, 2011-NMSC-003, ¶ 38, 149 N.M. 185, 246 P.3d 1057 ("The bar on double jeopardy serves the obvious purpose of ensuring that a defendant

9

is not punished twice for the same offense."). Because the State failed to demonstrate that each encounter was separate and distinct, the evidence indicates that Defendant's course of conduct was unitary. Thus, we reverse Defendant's conviction for the second count of CSPM.

**C.     Mistrial Was Required by Manifest Necessity**

When the district court declares a mistrial, "the double jeopardy protection generally prohibits a defendant from being retried for the same offense unless the mistrial was found to have been declared for reasons of manifest necessity." *State v. Yazzie*, 2010-NMCA-028, ¶ 10, 147 N.M. 768, 228 P.3d 1188 (internal quotation marks and citation omitted). Defendant argues that the district court improperly granted a mistrial at his first trial, following an incident in which a juror believed she had been threatened during deliberations by a person who indicated that he was related to Defendant. "To say that a mistrial is required because of manifest necessity means that in order to preserve the ends of public justice, it is clear and evident that terminating the trial is necessary because of something extraordinary which occurred in the trial." *Id.* ¶ 11 (internal quotation marks omitted). Manifest necessity is always the grounds for the mistrial when the court chooses to declare a mistrial sua sponte. *Id.* The requirement of manifest necessity in such a situation ensures that the

10

defendant's constitutional protection against double jeopardy will only yield to the public's interest when supported by a sufficient reason. *Id.*

As explained above, the circumstances that necessitate the mistrial on these grounds must be extraordinary. *Id.* ¶ 13. When balancing a defendant's interest against the public's, "where the irregularity involves possible partiality within the jury, it has been more often held that the public interest in fair verdicts outweighs [a] defendant's interest in obtaining a verdict by his first choice of jury." *State v. De Baca*, 88 N.M. 454, 459, 541 P.2d 634, 639 (Ct. App. 1975). We also examine whether the district court considered less severe alternatives to the mistrial that would also ensure an impartial verdict. *Yazzie*, 2010-NMCA-028, ¶¶ 12-13. "Affecting the scope of inquiry required are the factors of magnitude of prejudice and the point at which the proceedings are terminated. As the magnitude of possible prejudice increases, we would expect less effort to be expended in seeking alternative resolutions." *De Baca,* 88 N.M. at 460, 541 P.2d at 640.

Prior to the threat involving a juror, the jury had not reached unanimity, though the jury foreperson announced that the jury might be able to reach a verdict if permitted to go home and resume deliberations in the morning, which the court allowed. The next morning a juror reported to the court that she was threatened at a restaurant by a teenage boy who had approached her and stated: "You had better not

11

vote for a guilty verdict for my grandpa." As a result, the juror was "very shaken [and] very concerned."

Defense counsel specifically requested a mistrial "because of what happened to this jury and [because both counsel and the court] don't know what's going on [in the jury room] at this point." The State agreed, asserting that if the juror communicated the incident to the rest of the jury, the jury would likely use such information to infer negative attributes about "the type of person [Defendant] is[.]"

The district court indicated its reluctance to have a mistrial, stating that it would "like to see the jury" and that Defendant "is entitled to his day in court and he's had it. The jury is deliberating. This is . . . very serious." The district court brought the juror in to determine whether such a threat would affect her ability to make an impartial decision, and whether she had discussed the matter with the other jurors. The juror stated that she "was furious" about the teenagers coming to her table and one of them making the threat. The juror indicated that, in addition to the threat, "they" had been following her this morning from her home to the courthouse, and "they were sure watching [her]." She disclosed that she had already discussed the incident with the rest of the jury.

Subsequently, the district court summoned the jury and counsel to court and stated that it had no choice but to declare a mistrial. The court explained:

[W]hat I am going to do is declare a mistrial in this matter. It's the only thing that I can do and be fair to . . . Defendant and . . . the jurors. This is something that we did not anticipate. We never anticipate any type of allegation like this coming forth where jurors are placed in a situation that bothers them, that concerns them.

And so there's just as far as the [c]ourt's concerned, a manifest necessity to say thanks. I'm going to release you. I'm going to tell you that this [c]ourt is going to retain jurisdiction to retry this case.

We conclude that the threat to the juror, her reaction to it, and her communication of the threat to the other jurors were adequate grounds for granting a mistrial for manifest necessity. The identification of the threat as emanating from Defendant's family, the additional contact the following morning from the teenager who made the threat, and the communication of the incident to the entire jury posed too great a likelihood of prejudice toward Defendant and sufficiently justified the court's declaration of a mistrial even when weighed against Defendant's right to be protected from double jeopardy. As defense counsel had argued, the juror's emotions likely weighed upon the other jurors, creating unfair prejudice toward Defendant. By granting the mistrial, the court chose to protect both the public's and Defendant's interest in having a fair trial without the involvement of prejudice created by the threat. This interest greatly outweighed Defendant's interest in being tried by his first-choice jury.

13

The district court clearly considered less severe alternatives than a mistrial, as it was reluctant to declare one. While determining whether the juror would still be impartial and whether the entire jury was tainted by the incident, the district court determined that the juror was still distraught over the matter and that the entire jury had learned of the threat. At this point, we agree that the district court could not ensure impartiality of the jury without granting a mistrial. The threat jeopardized the jury's ability to consider the facts without bias against Defendant. Since the magnitude of the prejudice was great, we do not expect the district court to spend more effort than it did in determining alternatives to a mistrial.

We conclude there was a manifest necessity to grant a mistrial due to the threat communicated to one of the jurors. Thus, Defendant's convictions from his second trial are valid.

**II. CONCLUSION**

Because the jury instructions for two counts of CSPM violated Defendant's right to be free from double jeopardy, we reverse Defendant's conviction for the second count of CSPM. The district court properly excluded certain testimony offered by Defendant in his defense. The district court also properly determined that manifest necessity was established at Defendant's first trial, and his subsequent retrial did not

14

violate Defendant's protection from double jeopardy. Hence, we affirm Defendant's remaining convictions for one count of CSPM and one count of CSCM.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

16