This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: July 2, 2025**

**No. S-1-SC-40577**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALBERTO VILLANUEVA CAPRIO,**

Defendant-Appellant.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Cindy Leos, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Meryl Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

**DECISION**

**VARGAS, Justice.**

**{1}** Defendant Alberto Villanueva Caprio was indicted on three counts of second-degree criminal sexual penetration of a minor, one count of sexual exploitation of children (manufacturing), two counts of child abuse (no death or great bodily harm), and two counts of bribery or intimidation of a witness (threats). After two days of trial by jury in the district court, we stayed the criminal prosecution pending consideration of a related Rule 12-504 NMRA petition for writ of superintending control. The district court

declared a mistrial and subsequently determined the mistrial was occasioned by manifest necessity. As he did below, Defendant asserts on appeal that because no manifest necessity was shown his constitutional right to be free from double jeopardy bars retrial.

**{2}** We exercise our discretion to affirm the district court by nonprecedential decision and thus limit our discussion to the law and the facts necessary to decide the merits of this appeal. *See* Rule 12-405(B) NMRA; *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (explaining nonprecedential decisions "are written solely for the benefit of the parties," who "know the details of the case").

## I.      BACKGROUND

**{3}** While preparing for his criminal trial, Defendant learned the alleged victim had applied for a so-called T-Visa. Under federal law, T-Visas give victims of severe human trafficking who are in the United States because of that trafficking the ability to lawfully reside here. *See* 8 U.S.C. § 1101(a)(15)(T). Citing impeachment purposes, Defendant moved to compel disclosure of "any and all information" regarding the alleged victim's application for a T-Visa and "any related materials, communications or information." The district court granted Defendant's motion to compel disclosure of all materials related to the alleged victim's application for immigration relief.

**{4}** At the time the alleged victim applied for a T-Visa, she was represented by the New Mexico Immigration Law Center (NMILC), which the district court ordered "to produce to defense counsel and the State all materials in [its] possession pertaining to any immigration relief" the alleged victim sought. NMILC filed a Motion to Quash Subpoena Duces Tecum and to Vacate Order Granting Motion to Compel Immigration Information. NMILC asserted it should not be compelled to produce the T-Visa application and related materials because they were confidential under federal law and were also protected by the attorney-client privilege. The district court decided to review the T-Visa application *in camera* and set the issue for a hearing in the event it determined the material could be disclosed.

**{5}** NMILC filed a Motion for Reconsideration or in the Alternative Stay. It asked the district court to reconsider its decision ordering NMILC to provide visa documents for *in camera* review or to stay its decision on NMILC's motion to quash until this Court decided a then pending emergency petition for writ of superintending control in *Ramirez v. Marsh*, which raised similar issues concerning the discoverability of visa-application materials in a criminal proceeding *See* ___-NMSC-___, ¶ 1, ___ P.3d ___ (S-1-SC-39966, May 15, 2025). During oral argument on NMILC's reconsideration motion and in recognition of the pending emergency writ petition in *Marsh*, the district court acknowledged the disclosure of immigration application information was "an issue that obviously the Supreme Court wants to bring some resolution to." But the district court concluded the best course of action remained *in camera* review due to a then looming trial date of October 10, 2023, and what the court saw as "potentially very relevant information based on the charges and based on . . . some of the issues that were

outlined within the defendant's notice of relevancy." For these reasons, the district court denied NMILC's Motion to Quash and its Motion to Reconsider.

{6}     One week after the district court denied its motions, NMILC filed in this Court a Petition for Emergency Writ of Superintending Control and Request for Stay (Emergency Writ Petition). NMILC pointed out its Emergency Writ Petition raised issues similar to those pending before this Court in *Marsh* and asserted it would be efficient and beneficial for the Court to consider the issues raised in this case simultaneously with those raised in *Marsh*.

{7}     Trial preparation continued in the wake of NMILC's Emergency Writ Petition. Defendant moved to enforce the district court's order to produce the T-Visa application materials and in response the district court extended the scheduled trial date and directed NMILC to provide the T-Visa records for *in camera* review. In doing so, the district court acknowledged the pendency in this Court of NMILC's Emergency Writ Petition but noted its order to compel disclosure of the victim's T-Visa application materials was still in place and no stay had been issued.

{8}     NMILC then filed an Emergency Motion for Stay in this Court, seeking a stay of the district court proceedings against Defendant. To avoid sanctions, however, NMILC provided the T-Visa application and materials to the district court for *in camera* review. After its *in camera* review and one week before trial, the district court provided the parties with a redacted version of the alleged victim's T-Visa documents.

{9}     With no resolution of NMILC's Emergency Writ Petition or its Emergency Motion for Stay, Defendant's case proceeded to trial on November 20, 2023. After the jury was empaneled and two days of trial were completed—during which the State presented all but one of its witnesses—we granted NMILC's request for a stay and provided Defendant and the State fifteen calendar days in which to file a response to NMILC's pending Emergency Writ Petition. The district court immediately declared a mistrial on November 22, 2023, explaining to the parties it had been instructed to do so by this Court and that it did not know how long the stay would remain in effect.

{10}    Both the State and Defendant objected to the declaration of a mistrial. Defendant additionally filed a Motion to Dismiss and Bar Retrial. The district court then memorialized its decision to declare a mistrial in a written order. It declined to rule at that time on whether the case could be retried without running afoul of double jeopardy principles and instead gave the parties the opportunity to research and brief that issue.

{11}    In the meantime, and within several weeks of the district court's declaration of a mistrial, Defendant and the State each timely filed a response to the Emergency Writ Petition and Emergency Stay Motion. On February 15, 2024, we issued an order establishing a briefing schedule in NMILC's writ proceeding. Briefing on the Emergency Writ Petition was completed on March 11, 2024, almost four months after the mistrial was declared. We then consolidated NMILC's Emergency Writ Petition with the emergency writ petition in *Marsh*, which, as indicated, raised similar issues.

**{12}**    On May 7, 2024, more than five months after the district court declared the mistrial, we granted NMILC's Emergency Writ Petition to the extent it sought to prohibit the production of the alleged victim's T-Visa application and related materials, and we lifted the stay. We also issued a writ of superintending control directing the district court "to reconsider and grant Petitioner's motion to quash subpoena duces tecum compelling production of the T-Visa nonimmigrant status application and related materials, to compel the return or destruction of any T-Visa materials previously produced, to prohibit the further production or use of any such related materials in this matter, and to otherwise proceed . . . in accordance with the order issued contemporaneously with this writ."

**{13}**    After we lifted the stay and issued the writ, briefing resumed in the district court on Defendant's Motion to Dismiss and Bar Retrial. The district court held a hearing, determined manifest necessity had compelled the mistrial, and denied Defendant's Motion to Dismiss and Bar Retrial. Defendant filed an application for interlocutory appeal. The Court of Appeals on its own motion certified the matter to us under NMSA 1978, Section 34-5-14(C) (1972) and Rule 12-606 NMRA and we accepted certification and granted the application for interlocutory review.

## II.    DISCUSSION

**{14}**    The federal constitution and our state constitution protect a criminal defendant from being "twice put in jeopardy" for the same offense. U.S. Const. amend. V; *Benton v. Maryland*, 395 U.S. 784, 787 (1969) (holding the double jeopardy clause of the Fifth Amendment applies to defendants in state prosecutions); N.M. Const. art. II, § 15; *State v. Saavedra*, 1988-NMSC-100, ¶ 6, 108 N.M. 38, 766 P.2d 298 (prohibiting the state from "twice subjecting a person to criminal prosecution for the same offense"). Indeed, in some instances, the Fifth Amendment protects a criminal defendant from retrial even when the criminal proceeding is not completed, but is stopped short of a final judgment. *Id.* ¶ 7. In those circumstances when the district court declares a mistrial over the objection of the defendant, the defendant cannot be retried unless the mistrial was declared for reasons of manifest necessity. *Id.* Defendant objected to the mistrial in this case. Thus, the question before the district court was whether the mistrial was due to manifest necessity.[1]

**{15}**    We review the district court's manifest necessity determination for abuse of discretion. *State v. Gutierrez*, 2014-NMSC-031, ¶ 21, 333 P.3d 247. In addressing this question, we are mindful that "[t]he subordination of a constitutionally protected interest . . . is not to be lightly undertaken." *Saavedra*, 1988-NMSC-100, ¶ 9. But as the term manifest necessity implies, protection against retrial is not absolute when the trial

---

[1]Defendant does not argue the New Mexico Constitution should be interpreted differently than the federal Constitution for purposes of manifest necessity. Thus, we rely on our established caselaw and do not engage in interstitial analysis. *See Saavedra*, 1988-NMSC-100, ¶ 6 n.1 (construing a defendant's double jeopardy protection under the New Mexico Constitution identically to that provided under the federal Constitution when reviewing whether manifest necessity supported a mistrial declaration); *see also State v. Mares*, 2024-NMSC-002, ¶ 29, 543 P.3d 1198 (reiterating "that state constitutional claims must be properly preserved at the trial level if litigants wish those claims to be considered on appeal").

process is stopped short of a final judgment. *Id.* ¶ 8. When a matter is not tried to conclusion, the "defendant's valued right to have his or her case heard by the jury already impaneled is sometimes in conflict with the public interest in allowing the prosecutor a full and fair opportunity to present the case." *Id.*

**{16}** As we consider whether Defendant's right to have the original jury resolve his case or the public's interest in a fair trial that results in a just judgment prevails here, we recognize there is no mechanical rule for resolving the tension between these competing interests. *See Saavedra*, 1988-NMSC-100, ¶ 8; *State v. Messier*, 1984-NMCA-085, ¶ 11, 101 N.M. 582, 686 P.2d 272 ("No mechanical rule exists for determining the existence of manifest necessity."). "'Manifest' necessity has been interpreted as a 'high degree' of necessity." *Saavedra*, ¶ 9 (internal quotation marks and citation omitted). However, the district court should be afforded broad discretion whether to declare a mistrial when the underlying issue involves possible jury bias. *Id.* In instances involving issues other than possible jury bias[2], we refrain from overruling a district court's finding of manifest necessity absent a clear indication that it failed to engage in a "scrupulous exercise of judicial discretion." *Id.* ¶ 14 (internal quotation marks and citation omitted). As a reviewing court, we may affirm a district court's finding of manifest necessity when a sufficient basis for the mistrial appears in the record. *Id.* ¶ 13.

**{17}** New Mexico case precedent provides that when the district court, acting *sua sponte,* declares a mistrial, it must be held to a strict standard of necessity in terminating the trial and requiring the defendant to start over. *See State v. Yazzie*, 2010-NMCA-028, ¶ 9, 147 N.M. 768, 228 P.3d 1188 (citing, *inter alia, State v. Litteral*, 1990-NMSC-059, ¶ 13, 110 N.M. 138, 793 P.2d 268 (recognizing that "courts should be most reluctant to declare a mistrial when the defendant is not the movant")). In this context and consistent with *Saavedra*, we determine (1) whether the circumstances necessitating the mistrial were sufficiently extraordinary to override Defendant's double jeopardy interests and (2) whether there were alternative measures less drastic than a mistrial that could have alleviated the problem so the trial could continue to an impartial verdict. *Yazzie*, 2010-NMCA-028, ¶ 13.

**{18}** In evaluating whether manifest necessity requires a mistrial, we consider the circumstances at the time the mistrial was declared that were identified by the district court and that are supported by the record proper. *See State v. Smith*, ___-NMSC-___, ¶ 15, ___P.3d___ (S-1-SC-39989, March 27, 2025) ("review[ing] the district court's decision to resume deliberations [rather than declaring a mistrial] based on the circumstances as presented at the time of the court's decision, not in hindsight").[3] The

---

2In *Saavedra*, we noted that substantial deference should also be given to the district court's ruling when the underlying issue involves a deadlocked jury; however, jury deadlock is not at issue here. 1988-NMSC-100, ¶ 9.

3Defendant asserts the district court declared a mistrial based solely on an off-the-record directive from this Court and objects to the district court's reliance on any such off-the-record directive for its manifest necessity determination. We reject this characterization and argument as it ignores the district court's independent consideration of other circumstances, which were clearly part of the record and which supported its finding of manifest necessity.

district court here identified two circumstances that supported a mistrial due to manifest necessity. First, there likely would be an indefinite and lengthy delay before the pending Emergency Writ Petition would be resolved. Second, there was potential juror bias concerning a key evidentiary issue in Defendant's case. As detailed below, we hold these concerns justified the district court's determination that the mistrial resulted from manifest necessity.

## A. Extraordinary Circumstances Supported the District Court's Mistrial Declaration and Manifest Necessity Determination

**{19}** New Mexico courts have long recognized that trial delay and potential juror bias can each satisfy the extraordinary circumstances required to support a district court's finding of manifest necessity. *See Yazzie*, 2010-NMCA-028, ¶ 13 (recognizing that the "circumstances necessitating the mistrial must be extraordinary ones sufficient to override the defendant's double jeopardy interest"). In *Saavedra*, the trial judge *sua sponte* declared a mistrial based primarily on delays caused by the combination of defense counsel's unexpected chicken-pox infection and the prosecutor's long-planned back surgery. 1988-NMSC-100, ¶¶ 2, 3, 5. We confirmed that these circumstances constituted manifest necessity to declare a mistrial. *Id.* ¶¶ 5, 14, 17. In *State v. Litteral*, the district court determined that defense counsel's attempt to elicit inadmissible testimony from the State's key witness in a first-degree murder trial implicated the issue of juror bias, 1990-NMSC-059, ¶¶ 1, 12, 110 N.M. 128, 793 P.2d 268, and we affirmed the district court's finding of manifest necessity based on that possible juror bias. *Id.* ¶¶ 10-12, 25.

**{20}** Viewing both of these factors in tandem here, we conclude they constitute extraordinary circumstances sufficient to satisfy the "'high degree' of necessity" or the "strict standard of necessity" required to justify a mistrial based on manifest necessity. *See Saavedra*, 1988-NMSC-100, ¶ 9; *Yazzie*, 2010-NMCA-028, ¶ 9 (citations omitted).

## 1. Indefinite delay

**{21}** When informing the parties of the stay issued by this Court, the district court immediately raised the issue of manifest necessity and a colloquy ensued between the district court and respective counsel on the double jeopardy consequences of declaring a mistrial. During that exchange, the district court stated it did not know how long the stay would be in effect. The district court later explained in its written order declaring a mistrial that the delay would last a minimum of two weeks to allow Defendant and the State to respond to NMILC's Emergency Writ Petition, followed by full briefing in this Court.

**{22}** The district court also knew when it declared a mistrial that the related *Marsh* emergency writ petition had been pending for several months in this Court without resolution. The district court was alerted to these circumstances early on, as NMILC advised it before trial that the *Marsh* emergency writ petition was pending and raised a similar issue about the disclosure of immigration materials. NMILC also provided the district court with a copy of the *Marsh* emergency writ petition. Referring to the *Marsh*

petition, the district court set about developing a very clear record of the information defense counsel was looking for in the T-Visa application, "especially since [the issue is] up on a writ right now."

**{23}** Based on the information available to the district court at the time it declared a mistrial, we cannot say its stated concern about an indefinite and likely lengthy delay before trial could resume with the empaneled jury was a failure to engage in a "scrupulous exercise of judicial discretion." *Saavedra*, 1988-NMSC-100, ¶¶ 14, 16 (declining to view the trial court's declaration of a mistrial due to scheduling issues as a failure to engage in a "scrupulous exercise of judicial discretion"). Here, the unexpected circumstances were more extenuating than those in *Saavedra*. In *Saavedra*, the district court dealt only with its own calendar concerns and scheduling issues caused by trial counsels' respective physical ailments. 1988-NMSC-100, ¶ 5. In the matter at bar, the scheduling issues arose because there were two emergency writ petitions pending in this Court. The district court below had no control over how or when we scheduled or resolved those petitions, one of which had already been pending for months, and it could not have made any reasonable estimate on the potential duration of our stay for purposes of keeping the jury empaneled.

**{24}** Were the trial to have been indefinitely postponed, the normal restrictions on an empaneled jury would have had to remain in effect. These would have included a ban on the jurors communicating anything about the case in any manner to anyone, including family and friends, until a verdict was rendered and the case ended. Even more significantly, the jurors would each have had to remain available for an indefinite period to resume jury duty, which would prevent them from scheduling family, work, vacation, or any other plans for an extended, unknown period of time. An indefinite postponement of trial would also have implicated the availability and scheduling of witnesses and the district court's ability to manage its own calendar.

**{25}** Given these considerations, the indefinite delay caused by the stay provided the extraordinary circumstances required to support the district court's manifest necessity determination. *Yazzie*, 2010-NMCA-028, ¶13.

**2.    Juror bias**

**{26}** As set forth in the district court's order memorializing its mistrial declaration, the court was "concerned that improper evidence may have been presented to the jury." Our stay of the proceedings was issued after a redacted version of the T-Visa application was provided to the parties and after defense counsel had been permitted to cross-examine the alleged victim about it. The district court was thus faced with the real possibility that its ruling allowing discovery of the T-Visa application would be reversed in the NMILC writ proceeding. If this had happened, the empaneled jury would have been exposed to improper impeachment evidence through defense counsel's cross-examination of the State's key witness about the written declaration she made in support of her T-Visa application, implicating the issue of potential juror bias. *See Litteral*, 1990-NMSC-059, ¶¶ 2, 12 (reasoning that improper impeachment of a key

witness raised the issue of juror bias and affirming on those grounds the district court's manifest necessity determination).

**{27}** As indicated above, we generally afford substantial deference to a trial court's declaration of a mistrial based on juror bias. *Litteral*, 1990-NMSC-059, ¶ 12; *see also Saavedra*, 1988-NMSC-100, ¶ 9. The district court in this case was thoroughly versed in the evidentiary issues raised by the T-Visa application materials. The discoverability and use at trial of those materials was the subject of numerous motions, hearings, and bench conferences, as well as voir dire of the alleged victim before she testified in front of the jury. The district court itself characterized the T-Visa application materials as "potentially very relevant information." This history provided a solid foundation for the district court's concern that improper impeachment evidence may have been presented to the jury and that merely postponing the trial was unlikely to cure and remedy the improper disclosure of T-Visa application information.

**{28}** On appeal, Defendant attempts to minimize the importance of the T-Visa application evidence. He alleges that references to the T-Visa documentation during defense counsel's cross-examination of the alleged victim were "minimal"; the visa documents "played little to no role at trial"; there was no prejudice to the State's interests; and "there was no or extremely minimal evidence presented that implicated the document production issues being litigated in this Court." But the record demonstrates that broad discovery of the T-Visa application to impeach the alleged victim was clearly important to the defense, and Defendant's attempts to minimize its importance are unavailing.

**{29}** Defendant steadfastly sought discovery of the T-Visa application because it might contain statements about what was alleged to have occurred between Defendant and the alleged victim and, as Defendant maintained, was "relevant information at the very core of this case." Defense counsel explained to the jury during opening statements that "most importantly," the alleged victim might have a strong motive to fabricate a story because the inculpatory allegations against Defendant supported her visa request. Defense counsel then cross-examined the alleged victim based on the written declaration she signed as part of her T-Visa application. Perhaps most tellingly, after the district court raised the issues of mistrial and manifest necessity, defense counsel opposed the mistrial on the ground the T-Visa issue was the "centerpiece of our defense" and the concern that a different order relating to the T-Visa issue would necessarily dictate a change in Defendant's trial strategy.

**{30}** Given the importance Defendant himself placed on the T-Visa application materials to his trial and the prejudice the State could have incurred from improper impeachment of its key witness, we conclude potential juror bias was an extraordinary circumstance supporting the district court's manifest necessity determination. *See Litteral*, 1990-NMSC-059, ¶ 12 (holding the district court properly concluded the State had been prejudiced "because improper impeachment evidence concerned the State's main witness"); *Yazzie*, 2010-NMCA-028, ¶ 13 (explaining defendant's double jeopardy interests are overridden only when a mistrial is necessitated by extraordinary circumstances).

**B.  The District Court Considered Whether There Were Alternative Measures That Could Have Alleviated the Problem and Allowed the Trial To Continue To an Impartial Verdict**

**{31}**   Defendant hypothesizes that any problems caused by our stay pending resolution of NMILC's Extraordinary Writ Petition did not require the district court to declare a mistrial because (1) "the district court could have apprised this Court of the facts on the ground and requested the stay be lifted, with assurances the T-visa documentation would remain confidential" or (2) "[t]his Court could have allowed the trial to proceed while still allowing for the eventual writ remedy ordering the parties to destroy all remaining evidence." As will be shown, these disjunctive arguments are strained and unpersuasive.

**{32}**   As an alternative to a mistrial, it was not within the province of the district court to question the propriety of the stay this Court had just issued or to speculate about how we might have responded to any such questioning. To the contrary, the district court was obligated to comply with our stay order. *See State v. Mares*, 2024-NMSC-002, ¶ 33, 543 P.3d 1198 ("It is axiomatic that our justice system requires strict adherence to vertical stare decisis, which is the principle that lower courts are bound by the precedent of reviewing courts."); *see also State v. Sedillo*, 1974-NMSC-053, ¶ 3, 86 N.M. 382, 524 P.2d 998 (noting the Court of Appeals lacks authority to determine if Supreme Court orders are erroneous). It follows that compliance with our stay order does not indicate any abuse of discretion by the district court in determining manifest necessity.

**{33}**   Defendant further argues that any potential juror bias was minimal and could have been cured by a limiting instruction. But the district court specifically determined that any remedial actions, such as instructions to the jury or postponing the trial, were unlikely to cure or remedy any possible improper disclosure of T-Visa information. As previously discussed, when the underlying issue involves possible juror bias, we generally afford substantial deference to a trial court's mistrial ruling. *Litteral*, 1990-NMSC-059, ¶ 12. We also note that the district court considered at length the evidentiary issues surrounding disclosure of T-Visa application material; immediately raised appropriate double jeopardy concerns and the question of manifest necessity; withheld ruling on the manifest necessity issue until we resolved the Extraordinary Writ Petition and lifted the stay; provided the parties with a full opportunity to brief and argue the issue; and explained in written orders the bases for the court's mistrial declaration and its ruling on manifest necessity. By doing so, the district court did not act "irrationally, irresponsibly or precipitately in . . . sua sponte order[ing] a mistrial." *Cf. Callaway v. State*, 1990-NMSC-010, ¶ 7, 109 N.M. 416, 785 P.2d 1035 (internal quotation marks and citation omitted). Instead, the court "demonstrated a sensitivity to the double jeopardy concerns by exercising careful consideration of the [juror bias] issue in a calm, reflective, and thoughtful manner." *Litteral*, 1990-NMSC-059, ¶ 14.

**{34}**   For the reasons stated, we cannot say the district court's assessment that other alternatives less drastic than a mistrial would be unavailing lacked thoughtful consideration or was unsupported by the record below. *Yazzie*, 2010-NMCA-28, ¶ 13; *see also County of Los Alamos v. Tapia*, 1990-NMSC-038, ¶ 23, 109 N.M. 736, 790

P.2d 1017 (stating that a trial court's decision to declare a mistrial "will be accorded respect and the defendant will be required to undergo reprosecution . . . where there was a serious likelihood of juror bias engendered by improper comments to the jury"), *overruled on other grounds by City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 25, 285 P.3d 637; *Litteral*, 1990-NMSC-059, ¶ 12 (holding the district court properly concluded the state had been prejudiced to the point where an admonition or curative instruction would not have cured the harm when the defense referenced an inadmissible prior conviction to impeach the state's main witness).

## C. The District Court Did Not Abuse Its Discretion in Finding Manifest Necessity

**{35}** Holding the district court to a strict standard of necessity for its *sua sponte* declaration of a mistrial, we conclude the circumstances necessitating the mistrial were extraordinary and that there were no alternative measures less drastic than a mistrial that would have allowed the trial to continue to an impartial verdict. *See Yazzie*, 2010-NMCA-028, ¶¶ 9, 13. There was no governmental oppression or manipulation, and the district court not only had good reasons for declaring a mistrial but was practically compelled to do so by the circumstances. *Tapia*, 1990-NMSC-038, ¶ 23. When this is the case, the public interest in fair trials prevails over Defendant's double jeopardy interests. *Cf. id.* ¶ 24 (recognizing that "where the government has not been responsible for the [trial] error and has not sought termination of the trial, the defendant's interest in ridding himself or herself of the evils attendant upon another trial may be subordinated to society's interest in the correct application of its laws"). Accordingly, we discern no abuse of discretion in the district court's manifest necessity determination as its ruling was neither clearly untenable nor unjustified by reason. *See State v. Sanchez*, 2020-NMSC-017, ¶ 21, 476 P.3d 889.[4]

**{36}** Before closing, we briefly touch on one final matter. Giving proper effect to this Court's recent holding in the related consolidated writ proceedings creating "an evidentiary privilege that prohibits compelled disclosure of . . . T-Visa applications from victims," *Marsh*, ___-NMSC-___, ¶¶ 22, 25-26, 47, (*consolidated with NMILC v. Leos*, S-1-SC-40114), we direct that all T-Visa application materials be removed from the record proper in this case.

---

4Federal courts have upheld manifest necessity determinations in similar circumstances. The United States Supreme Court explained almost fifty years ago that "[t]here are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias." *Arizona v. Washington*, 434 U.S. 497, 513 (1978). Noting the trial judge's familiarity with the jurors, the evidence, and the tone of argument, the Supreme Court concluded the trial judge "is far more conversant with the factors relevant to the determination than any reviewing court possibly can be." *Id.* at 514. More recently, the First Circuit held the district court did not abuse its discretion when it determined a mistrial was occasioned by manifest necessity due to a possible continuance of indeterminate length which would exceed seven to ten days. *United States v. Dennison*, 73 F.4th 70, 80, 81 (1st Cir. 2023).

### III.    CONCLUSION

**{37}**    For the reasons stated above, we conclude that the mistrial ordered by the district court was due to manifest necessity and thus affirm the district court's denial of Defendant's Motion to Dismiss and Bar Retrial.

**{38}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**BRIANA H. ZAMORA, Justice**